### GIST v. BARROW.

1. PRACTICE OF SUPREME COURT: *Findings of a Chancellor.*

    The reason of the rule that the Supreme Court will not reverse the verdict of a jury when there is any fair evidence to sustain it, does not apply to the findings of a Chancellor when the evidence is as fully before the Supreme Court as before the Chancellor; although this court will always respect and sustain the findings of a Chancellor on facts, unless the preponderance otherwise be clear and decided.

2. FRAUD: *Purchase by creditor to save his debt.*

    A creditor has the right to purchase the land of his debtor in satisfaction of his debt; and, if necessary or convenient to effect the object, may advance cash to the debtor for balance in value, without any obligation to see to the application of the cash to the debts of others.

APPEAL from *Lee* Circuit Court, in Chancery.

Hon. M. T. SANDERS, Circuit Judge.

*Thomas C. Gist, pro se.*

Contends that the evidence totally fails to show any fraud on the part of Thomas Gist in the sale; that the appellant was an innocent purchaser, for an adequate price, from one who had a record title; that fraud is never presumed, but must be proved. Cites *Story's Eq.*, sec. 381; 37 Ark., 145.

*J. D. Barrow, pro se.*

The conveyances were made to cover up the property of Thomas Gist, and defraud, etc., creditors, and void. *Gantt's Digest, sec. 2954; 31 Ark., 548; 1 Story's Eq. Jur., sec. 353.*

There are several badges of fraud in this transaction : 1. Heavy indebtedness. 2. Transfer of all property. 3. Pendency of suit. 4. Calling Govan to witness payment. Any one of which would be conclusive in the absence of satisfactory proof. (*Bump on Fraud. Conv.*, *pp. 78–80–1, 95, etc.*) 5. T. C. Gist's inability to make the purchase. (*Ib., 93 and 552; 31 Ark., 346.*) Failure to show where he got the money. (*Ib., 95, etc.*) See also *23 Ark., 735; 32 Ib., 251; 26 Ib., 317–321; 23 Ib., 258.*

The secret agreement to reconvey made the deed a mortgage. (*4 Kent, Redf. ed., star p. 141; 13 Ark., 112; 3 Ib., 364.*) Under this agreement Gist had an equity of redemption; and his reserving this interest was a fraud on his creditors. *31 Ark., 666.*

Quere. Was the deed executed by Lownsbury with a blank grantee, sufficient to pass title? *Greenl. Cruise, title 32, ch. 2, sec. 2; 28 Ark., 75–8; 10 Am. Rep., 266.*

EAKIN, J. This is a bill by Barrow, a judgment creditor, against the debtor, Thomas Gist, and his son, T. C. Gist, who holds under mesne conveyances from his father. The object of the bill is to annul those conveyances as fraudulent, and to subject the lands to the payment of the debt. The judgment rendered October 27, 1881, was founded upon a promissory note executed in August, 1875. There had been execution, and no property found. The bill was answered by T. C. Gist alone, putting in issue all the allegations of fraud, and claiming to be an innocent purchaser. Upon hearing, the Chancellor granted the relief as prayed, and the defendants appealed.

1. PRACTICE IN SUPREME COURT: Findings of Chancellor not conclusive.     This case depends upon the proof and the effect of the circumstances in showing fraud, the only question being their sufficiency to sustain the finding. There was no oral evidence, and the matter is as fully before us as it

was before the Chancellor. In such cases the reason of the rule which sustains, upon any fair evidence, the findings of jurors, and courts trying facts, does not apply; although this court will always so far respect the findings of a Chancellor upon facts as to sustain them, unless the preponderance otherwise be clear and decided.

It appears that in the spring of 1878, Thomas Gist was overwhelmed with debt. He owned some valuable bodies of land, amongst others, section 34, in township 1 north of range 3 east, which is the land in controversy. He seems, amongst other creditors, to have owed a large debt to King & Clopton, who had sued him; and were, as he thought, pressing him ungenerously. He resented that, and expressed the determination not to pay them until he got ready, which is usually understood to mean, as long as it can be avoided. He also owed to two firms a debt of about $1,000. J. D. Lownsbury had an interest in one or both of these debts, and had, besides, some individual claims against Gist, amounting in all, as he says, to about $2,000. He had also been instrumental in influencing the firm of Harris, Mallory & Co. to extend credit to Gist, and was naturally desirous of having them secured.

Gist about this time sold off a portion of his lands, concerning which no fraud is alleged. Another portion he conveyed in trust to secure Harris, Mallory & Co., and the rest, being the land in question, he ostensibly sold and conveyed to Lownsbury for $3,000, which from all that appears is an adequate price.

The consideration was the debt to Lownsbury, and the two firms above mentioned; and the balance in cash, which was paid in the presence of a witness called for the purpose of seeing it done. Lownsbury swears it was a *bona fide* payment, and so does Gist himself. The note, however, executed by Gist for the consolidated indebted-

ness assumed by Lownsbury was retained by the latter, and was plainly considered by both parties as a continuing debt. It does not appear to have included the cash advanced.

At or near the same time, and evidently as part of the same agreement, Lownsbury executed to Gist a written obligation to reconvey the land to Gist, or to any one he might designate, upon payment of the debt within a certain time. This agreement is not produced, but shown orally. Lownsbury executed and left with a friend a deed, with the name of the grantee in blank, to be filled up and delivered to whomsoever he, Lownsbury, might thereafter designate. The debt was afterward ostensibly paid by T. C. Gist, the substantial defendant, and sole respondent to the bill, and upon the order of Lownsbury the deed was filled up in his name and delivered to him. Thomas Gist, the original grantor, had, before that, announced that he would be unable to redeem. T. C. Gist claims to have paid his own money, and to be an innocent purchaser. The proof shows that he was a young man without any considerable means, with whom the father had been living for several years before this suit. He says he paid to Lownsbury $3,300 for the land, a part of this sum was one year's rent which Lownsbury had received. He says he obtained $500 of the money from the sale of a house and lot, but does not explain the source from which he derived title to the house and lot, nor even say it was his own. He says he paid the balance in two several payments in the same month, but can not remember how much at each time, nor explain how he got it. He makes no effort to approximate the amounts; says he carried the $500 from Marianna and got some more. He took the deed from Lownsbury without any general warranty or covenant.

Such are the material facts.

Gist v. Barrow.

If Lownsbury still held the land there would be little
doubt of his equity to retain it until repaid all that might be found honestly due him. The transaction was certainly in effect a mortgage by conveyance, and separate defeasance. Lownsbury had the right to insist upon and take a preference for his own debt without subjecting himself to the imputation of fraud, and if requisite, or convenient to effect the object, he might advance cash to the debtor for the balance in value; and he would not be under any obligation to see to the application of the cash to the other debts. Such might have been the only terms on which he could obtain any security at all. There is no evidence of bad faith on the part of Lownsbury, or if there be supposed to be any, on account of the unrecorded defeasance, it could affect only the value of the equity of redemption, which was all left for the other creditors, to which they were entitled.

But Lownsbury is paid up, and fully satisfied. If he had sold to a stranger, his vendee, purchasing in good faith, would have obtained a good title against everybody. But he sold to the son of the grantor and mortgagor, with whom the father was living, and who knew that the father had the equity of redemption, which, if of any value, belonged to the creditors. If he, in good faith, bought, with his own money, he was entitled to stand in Lownsbury's shoes. If his father furnished the funds, then the son is a mere trustee, and the attempt to hold the land as his own would be fraudulent. The court below did not consider him a *bona fide* purchaser, holding that the deed to him was made to hinder and delay creditors.

It is always unfortunate, when persons in embarrassed circumstances, so dealing with their property as to throw it into the hands of near relations, are not careful to have the whole world see and understand the entire good faith

of the whole matter. *Uberrima fides* is expected of those who, under such circumstances, would expect their dealings to pass unchallenged and unsuspected. Mystery, vagueness in explanation of what seems unaccountable, reticence, want of memory as to details on the part of those most interested, and, in the nature of things, most apt to remember, all give rise to doubt and suspicion. An accumulation of such things may make an array of circumstances which, though not sufficiently strong to prove fraud at law, may amount to fraud in equity.

There is nothing to show that defendant, T. C. Gist, ever owned any considerable property, or made any; or that any of the money used to pay Lownsbury belonged to him as his own. That he got the $500 from the sale of lots amounts to nothing. It is not shown that the lots were his. How he *got more* is left almost absurdly uncertain in one professing to vindicate his own good faith by his own testimony. A portion of the purchase money was certainly paid by the father—the portion allowed for rent, which belonged to the father in case of redemption, by the contract, and which, independent of such express stipulation, would be his by the equitable rules of chancery.

No special rules have been, nor can any be established for the demarcation of fraud. It is Protean. The Chancellor must determine each case by the surrounding circumstances, considered with reference to the ordinary courses of business, and the ordinary motives of men. He was, in this case, satisfied of the fraud. We see much in it to justify the conclusion, and can not say he erred.

Affirmed.