## DORRANCE vs McALESTER.

## Opinion delivered April 2, 1898.

*1.  Cross Examination.*

In an action in which one of the issues was the validity of the transfer of the stock of goods, it was proper upon cross examination of a witness who has testified concerning the sale to ask him any question that might shed any light whatever upon the transaction.

*2.  Statement of Attorney—When Binding on Party.*

A party is bound by the statements and admissions in the line of his duties of his Attorney, who was present as such when the sale of the stock of goods took place.

*3.  Fraudulent Conveyance—Statement by Vendor—Res Gestae.*

Appellant told one Halsell, a creditor of Oziah her vendor, that he must look to Oziah for his money.   While the bill of sale was being drawn, appellant told her Attorney he had better hurry up and make the bill of sale, that Halsell was trying to fix his business up with Oziah.   *Held*, That it was not error to permit Halsell to testify as to what Oziah said at the time.   That his statements were a part of the *res gestae*.

*4.  Fraudulent Conveyance—Prior Statements.*

Statements made by a vendor to different witnesses, prior to the time of the sale as to his efforts to sell his stock of goods, his reasons therefor, and his liabilities, are properly admitted in evidence.

*5.  Instruction—Not Error to Refuse on Point Already Covered by Court's Charge.*

It is not error to refuse an instruction when the court has already instructed the jury fully to the same purport in another instruction.

*6.  Fraudulent Conveyance—Notice.*

One buying a stock of goods with notice of such facts and circumstances in regard to the business and financial standing

and conditions, and the purpose of the vendor as would put an ordinarily prudent man upon inquiry, is chargeable with the knowledge of all facts which he could ascertain by inquiry.

*7. Purchase by Creditor from Failing Debtor.*

A creditor who buys goods from a failing debtor, must not aid the debtor in defrauding his other creditors. He must have a bona fide debt, must purchase the goods at a fair price, and he must purchase only to the extent that will satisfy his own debt.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Suit by Mary Dorrance against James J. McAlester, as United States Marshall and Nix, Halsell & Co., for recovery of the value of certain property, alleged to have been taken from her under a writ of attachment. Judgment for defendant. Plaintiff appeals. Affirmed.

One M. W. Oziah was engaged in the grocery business at Purcell, Indian Ter., and resided with his family at Lexington, Okl. Plaintiff, Mrs. Dorrance, was a half-sister to Oziah. On the 11th day of June, 1894, Oziah borrowed $500 from his neighbor Ida Blackburn (who appears as a witness as Ida Maxwell), and executed his note at five months, with plaintiff, Mrs. Dorrance, as surety on the note. He was never in a solvent condition, and after doing business for less than three months his liabilities amounted to $2,125, and his assets to only $1,200. He tried to sell out, but without success, until he made the sale to his sister, hereinafter set forth. Mrs. Dorrance only occasionally visited the store of her brother, but about the 18th day of July, 1894, was over at Purcell, and learned that her brother was then at a saloon in Lexington, and had been gamb-

ling and losing money. She became uneasy on account of her liability on the note, and at once advised with her attorney as to the best course to secure herself from loss. She requested that Oziah give her a mortgage to indemnify her against loss, which he refused. She then asked for him to sell her enough goods to satisfy the note, and she would assume and pay it herself. This Oziah persistently refused, and proposed that she buy the entire stock of goods, and pay the note herself. J. W. Hocker, her attorney, held an account of the Purcell Mill & Elevator Company against Oziah, which he agreed that Mrs. Dorrance might also pay, of the difference between the purchase price and the Ida Blackburn note. Mrs. Dorrance then made arrangements to purchase the goods and pay off the Ida Blackburn note, as well as the mill and elevator claim, and provided herself with sufficient money for that purpose. On the next day, when the transfer was being drawn up, she asked her attorney if she could not assume the payment of the note and the Purcell Mill & Elevator claim, and pay them later,—in fact, pay the note when it became due, in November following. This arrangement was then entered into, and a note taken for the claim of the mill and elevator, at 30 days, signed by Oziah and Mrs. Dorrance, and a bill of sale was drawn up, by which Oziah transferred the stock of goods at Purcell (not the book accounts and notes, of which there was about $1,000), and Mrs. Dorrance assumed payment of the Ida Blackburn note and the mill and elevator note; paying, as she claims, the difference in money,—it having been estimated and agreed upon as $600. Appellees allege that it was fraudulent conveyance. Plaintiff at once entered into the actual possession of said stock of goods, and put her son in charge thereof, as salesman. Nix, Halsell & Co., creditors of Oziah, learning of this transfer, without making further inquiry instituted attachment proceedings against Oziah, on the ground of his being

a nonresident of the Indian Territory; and on the next day the defendant James J. McAlester, as marshal for the United States court for the Indian Territory, levied the attachment writ on the stock of goods, and took them from the possession of the plaintiff herein. Mrs. Dorrance brought suit in the United States court for the Indian Territory at Ardmore against James J. McAlester, as marshal, for the value of the goods taken from her possession. She afterwards paid the Purcell Mill & Elevator note and the Ida Blackburn note as they became due. Nix, Halsell & Co. afterwards came into court, and asked that they be made parties defendant, and answered; pleading that the sale by Oziah to Mrs. Dorrance was ficticious, fraudulent, and void. The cause was afterwards transferred to Purcell for trial, and at the November term, 1895, a trial was had before a jury, and verdict for plaintiff for the value of the goods. The court set this verdict aside, and granted a new trial, in the regular manner; and at the April, 1896, term of court, the case was again tried by a jury, and a verdict for the defendant, and judgement entered accordingly. After formality of a motion for a new trial, which was overruled by the court, plaintiff was granted an appeal to this court, and from the judgment of the court, and the order overruling the motion for new trial, prosecutes this appeal, complaining of errors of the trial court at the trial of the cause.

*J. W. Hocker* and *B. D. Davidson*, for appellant.

1. The court erred in allowing the defendant to cross examine, over the objection of plaintiff, the witness Oziah, as to irrelevant and collateral matter, without first making him defendant's witness, and in instructing the jury that defendant was not bound by the answers of Oziah to such questions. 1 Greenleaf on Ev. § 449; 1 Wharton on Ev. § 529 (15th Ed.); Wills vs Russell; 100 U. S. 621; Seymour vs Lumber Co., 58 Fed. 957.

2. The court erred in allowing the witness Hocker, to testify on cross examination, over the objections of the plaintiff, as to his knowledge of the insolvency of Oziah and as to making inquiry as to the insolvency of Oziah. The knowledge of the attorney, undisclosed to Mrs. Dorrance, or a failure of her attorney to make inquiry could not affect Mrs. Dorrance and make her a party to the fraud; the *mala fides* of the plaintiff herself, is necessary where she was acting for herself and not through an agent, and in this case she was acting for herself in making the purchase. Fordyce vs McCants, 51 Ark. 509; Elliot Appellate Procedure 670; Bump on Fradulent Conveyances § 599; Coyne vs Weaver 84 N. Y. 386.

3. Court erred in allowing witnesses to testify concerning conversations had with Oziah, not in the presence of plaintiff, before the transfer to plaintiff. Bank vs Northrup, 22 N. J. Eq. 58; Crunsky vs Parlin, 42 Pac. 575.

4. Fraud cannot be presumed but must be proven by clear and satisfactory evidence. White vs Perry, 14 W. Va. 66; Thames vs Rembert, 63 Ala. 561, Hill vs Relfshider, 46 Md. 555; Bowden vs Bowden, 75 Ill. 143; London Bank vs Lempries, 5 Eng. Rep. (Moak) 137; Swofford Bros. vs Smith, 1 Ind. Ter. 314. In the case at bar, defendants allege a fradulent conspiracy and it was incumbent on them to prove such fradulent conspiracy by competent, legal and satisfactory evidence. Dardeene vs Hardwick, 9 Ark. 482; Irons vs Rayburn, 11 Ark. 378; Splawn vs Martin, 17 Ark. 146; Christian vs Greenwood, 23 Ark. 258; Erb vs Cole & Dow, 31 Ark. 554; Myricks vs Jacks, 33 Ark. 425; Toney vs McGehee, et al, 38 Ark. 419; Bamberger vs Schoolfield, 160 U. S. 149; People vs Flack, 125 N. Y. 324; s. c. 11 L. R. A. 807.

5. Though the sale be fraudulent on the part of the vendor, being made with the intent to defraud his creditors,

the purchaser cannot be affected by the fraud, unless he participates in it with a knowledge of a fraudulent design and with intent to further accomplishment of such design. This is the settled doctrine of Arkansas. Splawn vs Martin, *supra;* Hemstead vs Johnson, 19 Ark. 124; Catchings vs Harcrow, 49 Ark. 22; s. c. 3 S. W. 884; Gilkerson Sloss vs Carnes, 56 Ark. 414; s. c. 18 S. W. 1061.

6. Plaintiff had a right to purchase the entire stock of Oziah's goods and pay him the difference in cash, if that was necessary, in order to protect herself and secure the payment of the amount due her. Hiner vs Hawkins, 95 Ark. 303; s. c. 27. S. W. 65; Wood vs Keith 60 Ark. 425; s. c. 30 S. W. 756; Rice vs Wood, 33 S. W. 636. s. c. 31. L. R. A. 609; Grist vs Barron, 42 Ark. 521; Reehling vs Byers, 94 Penn. 316; Bauerman vs Van Buren, 44 Mich. 496; Covanhovan vs Hart, 21 Penn. 495; s. c. 60 A. D. 57; Huiscamp vs Wagon, Co., 121 U. S. 310; Crawford vs Neal, 144 U. S. 585, Bamberger vs Schoolfield, 160 U. S. 149; Also in. Texas and Missouri, Wood vs Castlebury, (Texas) 34 S. W. 653; Armstrong vs Elbert, (Texas) 36 S. W. 139; State vs Mason, 20 S. W. 620.

*C. L. Herbert* and *J. E. Humphrey*, for appellee.

1. Plaintiff having put Oziah upon the stand to testify concerning the sale it was proper cross examination to draw out all the details of the sale. 1. Greenleaf on Ev. (12th Ed) §445.

2. A creditor who buys goods from a failing debtor in payment of his indebtedness, cannot go beyond obtaining satisfaction of his own debt. He cannot pay cash for a part of the goods exceeding in amount his own debt. Harris vs Russell, 93 Ala. 59; Sanger Bros. vs Colbert, 84 Tex. 668; Black vs Vaughan, 70 Tex. 47; Smit vs Jacob Strauss Sad-

dlery Co., 2 Mo. App. 890; Hanchett vs Goetz, 25 Ill App. 445; Allen vs Stengel, 95 Mich. 195; Roeben vs Bowe, 26 Hun. 554; Hart vs Sandy, 39 W. Va. 644; Oppenheimer vs Halff, 68 Tex. 409; Seger's Sons vs Thomas Bros., 107 Mo. 635.

SPRINGER, C. J. (after stating the facts.) The errors assigned in this case will be considered in detail.

The first error assigned is to the effect that the court erred in allowing defendants' counsel to interrogate witness Oziah, on cross examination, as to matters not brought out in the direct examination, unless defendant first make Oziah his own witness, and that the court erred in stating to the jury that defendant was not bound by such testimony. It is the rule in most of the states of this country that the cross-examination must be limited to the matters stated in the examination in chief, and, if the party cross-examining inquires as to new matter, he makes the witness his own. Steph. Dig. Ev. p. 223 note 1, and authorities there cited. It is not always clear as to what is legitimate cross-examination, and what relates only to new matter. The examination of Oziah in chief related to the fact that he was in business at Purcell, the identification of the bill of sale to Mrs. Dorrance, to which his signature was attached, and the value of the stock of goods transferred by it. On cross-examination the witness was asked: "How much money did you put into that business? Answer. $500." The next question put was: "Where did you get it?" To this question counsel for appellant objected on the ground that it was not cross-examination of anything upon which the witness was interrogated. In view of the fact that the transfer of the stock of goods by witness to his sister was attacked as fraudulent by appellees, and that the witness was evidently hostile to them, we are of the opinion that the question put was proper cross-examina-

tion, that appellees had the right to put the question, and that they were not bound by the answers that the witness *Cross examination.* gave. The appellees had a right to probe the transaction to the bottom, and to bring to light every fact relating to it. It was especially proper to subject the witness Oziah to a rigid cross-examination as to everything which would throw light upon the transaction. The question did not relate to new matter, but to the very subject-matter of which the witness, in his examination in chief, testified, namely, to the sale of the stock of goods.

The second assignment of error is as follows: "The court erred in admitting in evidence the testimony of J. W. Hocker in the cross-examination as to his knowledge of the financial condition of Oziah, and as to whether or not witness made inquiry as to the financial condition of Oziah, and as to his solvency. Mr. Hocker was the attorney of appellant, and was present as such when the sale of the stock of goods took place. Mrs. Dorrance, the appellant, testifies that Mr. Hocker knew what the stock of goods amounted to, and that she "took his advice." In answer to the question, "Did Mr. Hocker help you to make the trade?" she answered, "Yes, sir." She and her attorney were together at the time, and he was advising her and helping her. She was bound by his *Statements of attorney.* statements and admissions in the line of his duties, and within the scope of his general authority as her attorney. Steph. Dig. Ev. p. 46; 1 Greenl. Ev. § 186.

The third assignment of error is to the effect that "the court erred in admitting in evidence the testimony of defendant Halsell relating to conversations had between witness and Oziah not in the presence of Mrs. Dorrance, the plaintiff herein." The question put to witness Halsell to which the objection was made and the exception taken was, "What did Oziah say about paying you this debt?" His answer was to the effect that Oziah said that he started his

business "on wind;" that he did not have a cent, and would not pay a cent. This statement was made just after the sale to Mrs. Dorrance. The sale had just been announced. The witness was present, trying to secure his own debt, and was trying to find out what had been done as to his claim,— whether it had been secured or not. Mrs. Dorrance had told witness she did not know anything about his claim, and that he must look to Oziah for payment. Then the question came, "What did Oziah say about paying you this debt?" Mrs. Dorrance having referred the witness Halsell, who was a creditor seeking payment of his debt, to look to Oziah, it was competent to ask him what he said about the payment. She was not prejudiced in the least by his answer. Mr. Easton, who was Oziah's clerk in his store, was called as a witness for the defendants, and testified that Mrs. Dorrance told Mr. Hocker, her attorney, while the papers were being drawn up, that he had better hurry up and make the bill of sale; that Mr. Halsell was trying to fix his business up with Mr. Oziah. She knew, evidently, that her brother was indebted to Mr. Halsell, and she was trying to get possession of the stock of goods, so as to defeat Halsell's claim. Oziah's statements at the time were in reality a part of the res gestæ. *Res Gestae.* They were all consulting and acting together, and had not separated when the statement to which exception was taken was made.

The fourth, fifth, and sixth assignments of error, which relate to the testimony of Eaton, William, and Josh Clardy, come under the rule stated above in the consideration of the third assignment. Statements made by Oziah to *Statements prior to sale.* these witnesses, prior to the time of the sale to Mrs. Dorrance, as to his efforts to sell his stock of goods, his reasons therefor, and his liabilities, could not prejudice her rights, except in so far as they might serve the purpose of explaining her acts and intentions in the matter.

(33)

The seventh assignment of error is to the effect that the court refused to submit to the jury the instruction set forth in the exception. The exception would have been well taken, had not the court given instruction No. 5, which fully covers the ground. It is not error to refuse an instruction when the court has already instructed the jury fully to the same purport in another instruction. Counsel for appellant insist that the charge of the court, taken as a whole, did not express the law as asked for in his instruction. Learned counsel may be able to see some difference in the legal principle as stated in the two propositions, but we are quite certain that the jury must have regarded both as embodying the same meaning. The substantial point in both instructions was that fraud was never to be presumed, and that the burden of proving it was on the party that alleged it. This was the idea that both propositions clearly set forth, and, the court having given one instruction, it was not error to refuse the other.

The other assignments of error relate to the giving of the following instructions by the trial court: "(6) The plaintiff, Mrs. Dorrance, had the right at the time to purchase from her brother, Oziah, the property, to protect herself on any bona fide claim which she held against him, or upon which she was security; and she would have the right to do that though he was insolvent at the time, and was seeking even to defraud his creditors, provided she was not at the time a party to a combination with him, and aiding him in his efforts to defraud his creditors. (7) If, therefore, she knew he was insolvent, or in failing circumstances, and knew of his purpose to defraud his creditors, and participated in the transaction, she could not recover in this case. Again, if she knew of his purpose to defraud his creditors, and his condition, or if she had notice of such facts and circumstances in regard to his business and financial standing and condition, and his purpose, as would put an ordinarily prudent person

*(margin note:)* Instruction — Refusal not error.

upon inquiry, she would be charged with a knowledge of all the facts which she could ascertain by inquiry; and if the jury should believe from all the facts and circumstances that such was his purpose, and the facts and circumstances attending and surrounding the transaction were sufficient to put a person of ordinary prudence upon inquiry, then she could not recover in this case, and you will find for the defendants. (8) To make void a sale by a failing debtor to a creditor, actual notice to the creditor of the fraudulent intent of the vendor is not necessary, if the facts and circumstances within his knowledge are sufficient to put a person of common sagacity upon inquiry, and the use of reasonable diligence would lead to discovery of the fraudulent purposes of the vendor; and, if he fails to make inquiry, he will be charged with notice of the fraudulent intent. (9) No purchaser thus put upon inquiry has the right to remain willfully ignorant of the facts within reach. It is not sufficient for his protection to show that he was a purchaser for value. He must also be a bona fide purchaser, a purchaser in good faith, a purchaser without notice of the fraudulent intention on the part of the party from whom he purchases. (10) By aiding a debtor to convert his property into money or promissory notes, which can be easily concealed from the creditors and placed beyond their reach, with notice, actual or constructive, that he is doing so to defraud his creditors, the person so purchasing participates in the fraud of the debtor, by assisting him in carrying out his fraudulent purpose. (11) A creditor may purchase goods from an insolvent or failing debtor in satisfaction of his debt, and it matters not whether or not he knew of the fraudulent intent of the debtor as to other creditors, so the purchasing creditor does not aid him in defeating his other creditors; but the purchasing creditor must have a bona fide debt, and must purchase the goods at a fair price, and to the extent only, and in satisfaction, of his debt. (12) Now, applying the in-

structions here given in charge to the jury to the facts in this case, if you should find from the evidence that the transaction between Mrs. Dorrance and her brother Oziah, was fraudulent, and that she knew of his fraudulent purpose, or had knowledge of facts and circumstances sufficient to put a person of common sagacity and prudence upon inquiry, it would be your duty to find for the defendant. If, on the contrary, you conclude from the evidence that the brother was guilty of no fraud, or that, if he was guilty of fraud; the plaintiff, Mrs. Dorrance, had no knowledge of his fraud, or no means of knowing of the existence of such fraud as suggested above, it would be your duty to find for the plaintiff." No exception was taken to the first instruction above quoted (No. 6) of the series given by the court. It is set forth in order to explain the instructions Nos. 10 and 11, which were given, and to which exceptions were taken. The exception to instruction No. 7 began with the words: "Or if she had notice of such facts and circumstances in regard to his business and financial standing and condition, and his purpose, as would put an ordinarily prudent man upon inquiry, she would be charged with knowledge of all the facts which she could ascertain by inquiry," etc. There was no error in the giving of this instruction. It frequently happens that knowledge of this kind can only be proven by facts which would put an ordinarily prudent person upon inquiry.

*Notice*

It seems that there were two trials of this case in the court below. In the first trial the court instructed the jury, among other matters, as follows: "A creditor has the right to purchase the goods of his debtor, in satisfaction of his debt; and, if necessary or convenient to effect the object, may advance cash to the debtor for balance in value, without any obligation to see to the application of the cash to the debts of others; and the fact that one who buys goods to save a bona fide debt due him from the seller knows the latter's fraudulent intent as to other creditors does not invali-

ate the sale, if he pays a fair price, and buys only enough
 satisfy his debt, unless necessity compels a purchase of
ore.'' At the first trial, with that instruction of the court,
e jury found for the plaintiff. The court granted a new
ial, and at the second trial the court refused the instruct-
n just quoted, and gave in lieu thereof instructions Nos. 10
d 11 of the series above quoted. The result of the sec-
d trial was a verdict for the defendants. It will thus be
en that the case turned upon the question as to whether
e creditor can purchase goods of the failing debtor or to
e extent only of his own claim, and in satisfaction only of
s own debt, or whether he may purchase beyond his own
bt, if necessity compels such purchase. If the vend-
 and vendee may determine whether the purchase shall
brace more than the amount of the debt, they will al-
ys contrive some way to create the necessity. We are of
 opinion that the weight of the authorities sustains the
inciple announced in the court's instruction No. 11 given in
 second trial of the case. A creditor who buys goods from
ailing debtor in payment of his indebtedness must not aid
 debtor in defrauding his other creditors. He must have
ona fide debt, must purchase the goods at a fair price,
 he must purchase only to the extent that will satisfy his
n debt. If part of the consideration is paid in cash, the
ount of cash paid can easily be concealed from his other
ditors, and placed beyond their reach. The purchasing
ditor would thus assist the failing debtor in carrying out
 fraudulent purpose. As stated above, the weight of the
horities seems to sustain this position. The counsel for
endants cite the following in their brief in its support:
rris vs Russel, 93 Ala. 59, 9 South 541; Sanger vs Col-
t, 84 Tex. 668, 19 S. W. 863; Black vs Vaughan, 70 Tex.
7 S. W. 604; Smit vs Saddlery Co., 2 Mo App. Rep'r,
; Hanchett vs Goetz, 25 Ill. App. 445; Allen vs Stingel,
Mich. 195, 54 N. W. 880; Roeben vs Bowe, 26 Hun. 554;

*Creditor must not aid debtor to defraud.*

Hart vs Sandy, 39 W. Va. 644, 20 S. E. 665; Oppenheimer
Halff, 68 Tex, 409, 4 S. W. 562; Seger's Sons vs Thom
Bros., 107 Mo. 635, 18 S. W. 33.   In support of the doctri
announced in the instruction which the court refused, cou
sel for plaintiff cites the following cases:  Hiner vs Hawkin
59 Ark. 303, 27 S. W. 65; Wood vs Keith, 60 Ark. 425,  30
W. 756; Rice vs Wood (Ark.) 33 S. W. 636; Gist vs  Barro
42 Ark. 521; Reehling vs Byers, 94 Pa. St. 316; Beurman
Van Buren, 44 Mich. 496, 7 N. W. 67; Covanhovan vs  Ha
21 Pa. St. 495; Bear's Estate, 60 Pa. St.  430;  Huiskamp
Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899; Crawford vs  Ne
144 U. S. 585, 12 Sup.  Ct.  759;  Bamberger  vs  Schoolfie
160 U. S. 149, 16 Sup. Ct.  225;  Wood  vs  Castlebury  (T
Civ. App. ) 34 S. W. 653; Armstrong Co. vs Elbert (Tex. C
App.) 36 S. W. 139; State vs Mason, 112 Mo. 374, 20  S.
629.   We have thus cited all the authorities presented
the counsel on either side on this question.   We do not c
cede the proposition that all the authorities are in  point.
fact, many of them do not support wholly the contention
counsel.

It is not necessary to refer to the other assignment
error.   The important points in the case have been  suff
ently considered.   We can see no reversible error in  any
the instructions or in any of the rulings of  the  trial  co
The judgment of the court is therefore affirmed.

CLAYTON, THOMAS and TOWNSEND, JJ., concur.