HORR v. HERRINGTON *et al.*

No. 2144, Okla. T.   Opinion Filed November 16, 1908.

(98 Pac. 443.)

1.   MORTGAGES—Foreclosure by Action—Rights of Junior Mortgagee. A junior mortgagee, not being made a party to a suit to foreclose a first mortgage, is not affected by a judgment and decree foreclosing it. The foreclosure is effectual against those persons who were made parties, and a sale would vest the estate in the purchaser, subject to the rights therein of the subsequent lienholder.

2.   SAME—Rights of Inferior Lienholder. One who has a lien, inferior to another upon the same property, has a right: First, to redeem the property, in the same manner as its owner might, from the superior lien; and, second, to be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby.

3.  **SAME—Redemption—Waiver of Right.** If the holder of a junior incumbrance on land, not being made a party to a suit to foreclose a senior mortgage, becomes the purchaser of said premises at the foreclosure sale, he thereby waives his right to redeem.

4.  **SAME—Foreclosure by Action—Effect of Decree.** The necessary consequence of a decree of foreclosure of mortgaged premises is to merge the interests of the parties to the suit in the decree, and to transfer and vest them in the purchaser at the sale.

5.  **SAME—Surplus—Rights of Junior Mortgagee.** A junior mortgagee has no claim, by virtue of his mortgage, upon the surplus money arising from a sale under a suit to foreclose a senior mortgage to which he was not made a party.

6.  **SAME—Redemption—Junior Mortgage.** If a junior mortgage has been duly recorded, a purchaser of the mortgaged premises on a foreclosure rendered on a senior mortgage will be presumed to have bid and purchased with reference to the junior mortgage and with knowledge of the right of the holder of that mortgage to redeem.

(Syllabus by the Court.)

*Error from District Court, Washita County; M. C. Garber, Judge.*

Intervention by W. O. Horr in a mortgage foreclosure suit by Lydia May Field against J. H. Herrington, F. C. Herrington, and J. M. Beal. Judgment for Beal, and intervener brings error. Affirmed.

*J. I. Howard* and *Massingale & Duff,* for plaintiff in error. *W. A. Smith,* for defendants in error.

KANE, J.   This was a controversy between W. O. Horr, the plaintiff in error, and J. M. Beal, one of the defendants in error, over the surplus accruing from the foreclosure sale of a certain tract of land.   On the 19th day of January, 1903, the defendants in error, J. H. Herrington and F. C. Herrington, husband and wife, executed and delivered to one Lydia May Field, a promissory note for the sum of $1,000, and to secure payment of the same executed and delivered a mortgage upon certain real estate situated in Washita county, Okla.   On the 1st day of December, 1903, the same parties executed to the plaintiff in error a note for $1,000, and executed a mortgage upon the same real estate, to secure pay-

ment thereof. On the 4th day of February thereafter they made, executed, and delivered to the defendant in error J. M. Beal a warranty deed to said premises, all of which instruments were duly recorded. On the 9th day of September, 1904, Lydia May Field instituted foreclosure proceedings upon the first mortgage, making the Herringtons and J. M. Beal parties defendant, the plaintiff in error herein, the second mortgagee, not being made a party. On the 31st day of October, 1905, a trial was had between the parties to the suit, and a judgment was rendered in favor of Lydia May Field and against the Herringtons for the sum of $938.37, together with interest and attorney's fees, and a decree of foreclosure was entered against all of the parties defendant, whereby it was decreed that the land be sold in the manner prescribed by law, and the proceeds of said sale applied: (1) In payment of costs of said sale and action; (2) in payment of said judgment; and (3) that the residue, if any, be paid to said defendant J. M. Beal.

About 30 days after the judgment and decree were entered the plaintiff in error, by leave of court, intervened in said action, setting up his note and mortgage. After stating facts sufficient to entitle him to a foreclosure of his second mortgage, he further alleged in substance that, by reason of the execution and delivery of the note and mortgage by John H. Herrington and F. C. Herrington to the intervener, said intervener has a lien on the premises therein described, and that intervener is entitled to a judgment against said John H. Herrington and F. C. Herrington in the sum of $753.37 and interest thereon at the rate of 12 per cent. per annum from February 1, 1904, and reasonable attorney's fees and all costs of suit. That the note from John H. Herrington and F. C. Herrington, his wife, to Lydia May Field, was a prior and first lien on said tract of land, and that the note and mortgage of intervener was a secondary and inferior lien thereon. Then follows the prayer, which is in words and figures as follows:

"Wherefore your intervener prays that said plaintiff herein, Lydia May Field, make strict proof of her claim against said defendants, and that a strict accounting thereof be made and of all

costs therein expended and all claims arising against said tract of land by reason of her mortgage thereon, and that when said tract of land is sold, as provided by law, that the proceeds thereof be applied, first, to the payment of the amount found to be due Lydia May Field under her first and prior lien and all costs therein expended, and that her mortgage and note be canceled, and that the proceeds of said sale, after being so applied, shall next be applied to the payment of the said note of this intervener, amounting to $753.37 principal and interest from February 1, 1904, at the rate of 12 per cent. per annum and a reasonable attorney's fee as therein provided, and all costs of said suit herein expended, and that the remainder thereof be paid to said defendants as their interests may appear, and that the note and mortgage of intervener be canceled and held for naught."

On the 5th day of July, 1906, the land was sold under the decree, and was purchased by the intervener for the sum of $1,-765, the same being more than two-thirds of the appraised value of the land, and the sale was afterwards upon his motion confirmed, and a sheriff's deed thereto made, executed, and delivered, the amount of the bid being paid to the sheriff and by him turned into court. In November, 1906, Beal was served with summons in the proceedings in intervention, and on the 19th day of March, 1907, he appeared and filed his separate answer to the petition, setting up the facts of the suit on the first mortgage, it having proceeded to judgment and sale, and that the intervener was the purchaser, that the mortgage of intervener was of record at the time said sale of land was made, and praying that the surplus in the sum of $600 over and above the amount necessary to pay the first mortgage and costs should be ordered turned over to him because of his ownership of the equity of redemption and legal title at the time of the sale. To this answer the intervener demurred, which demurrer was overruled by the court and judgment entered in favor of Beal.

That the plaintiff in error, not being a party to the proceedings, was not affected by the judgment and decree foreclosing the first mortgage, is now too well settled to need argument or author-

Vol. 22—38

ities to support it. When a party in interest other than the owner of the equity of redemption is not made a party to a bill for the foreclosure of a mortgage, the foreclosure is effectual as against those persons interested in the equity who are made parties. A sale would vest the estate in the purchaser, subject to redemption by the person interested in it who was not made a party to the proceedings. Story's Eq. Pleadings, § 193; *Matcalm v. Smith,* 6, McLean, 416, Fed. Cas. No. 9,272; *Kelgour v. Wood,* 64 Ill. 345; *Ohling v. Luitjens,* 32 Ill. 23; *Georgia Pac. R. Co. v. Walker,* 61 Miss. 481; *Frische v. Kramer,* 16 Ohio, 125, 47 Am. Dec. 368; *Tallman v. Ely,* 6 Wis. 244; *Banning v. Sabin,* 45 Minn. 431, 48 N. W. 8; *Turman v. Bell,* 54 Ark. 273, 15 S. W. 886, 26 Am. St. Rep. 35; *Porter v. Kilgore,* 32 Iowa, 379; *Spurgin v. Adamson,* 62 Iowa, 661, 18 N. W. 293; *Valentine v. Havener,* 20 Mo. 133; *Brundred v. Walker,* 12 N. J. Eq. 140; *McCall v. Yard,* 11 N. J. Eq. 58; *Haffley v. Maier,* 13 Cal. 13.

In this state the statutory rule is to the same effect. Section 3456, Wilson's Rev. & Ann. St. 1903, provides that:

"One who has a lien, inferior to another upon the same property, has a right: First. To redeem the property in the same manner as its owner might, from the superior lien; and, Second. To be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby;"

Section 3457 defines redemption as follows:

"Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay."

It is clear that the plaintiff in error did not attempt to exercise either of his statutory rights. That he was entitled to do so up to the time the land was sold and he became a purchaser thereof, there can be no doubt. And that his right to redeem would continue if any one but himself had been the purchaser at that sale seems equally clear. The sale would vest the estate in the purchaser, subject to redemption by the holder of the junior in-

cumbrance, who was not made a party to the proceedings. This doctrine is amply sustained by the authorities heretofore cited. The sale, though it failed to be effectual as against the holder of the second mortgage, would operate as an assignment of the first mortgage and all the mortgagee's rights thereunder to the purchaser who might proceed *de novo* to foreclose as against the parties who had been omitted. But if the holder of a junior encumbrance, who had not been made a party to the suit, becomes the purchaser, it obviously follows that his right to redeem is lost or waived. He could not redeem from himself, and he could not foreclose his mortgage against himself, for no one may be plaintiff and defendant in the same cause. The rule that the purchase of the land by the junior mortgagee merges his lien in the superior title is founded upon the reason that there could generally be no advantage to him in keeping on foot his own mortgage against his own estate. 1 Jones on Mortgages, § 869. But, of course, whenever an advantage could accrue to the mortgagee by preserving his lien for the purpose of using it as a screen to protect him from an intermediate title, such as a junior mortgage or other subsequent lien, the purchaser is entitled to keep his lien alive for such purpose. But there is no reason for the invocation of this rule in the case at bar. This controversy does not affect the title to the land; it is admitted by all parties that the plaintiff in error is the owner of it in fee simple, and, as far as the record shows, there were no liens subsequent to his mortgage.

Under our laws a mortgage conveys no title to the mortgagee, and, there being no provision for redemption after the foreclosure sale, it follows that all the right, title, and interest of all the defendants who were made parties to the suit merged in the decree and was vested in the plaintiff in error by virtue of his purchase at the sale and the issuance of the sheriff's deed to him, as he was the only person remaining who had any interest in the

land.   He intended no doubt to effect a merger of his mortgage lien into his paramount title thus acquired.

"The necessary consequence of a decree of foreclosure and sale of mortgaged premises is to merge the interests of the parties to the suit in the decree, and to transfer and vest them in the purchaser at the sale."   (*Tallman v. Ely,* 6 Wis. 244.)

By the purchase of the land and filing his petition in intervention, he voluntarily abandoned his right ·to redeem, and sought to attach his lien to the surplus arising from · the sale. There are no reasons that we know of why. this could not be done, provided there were sufficient equities to warrant a court of equity in granting such relief; but he was not entitled to it merely as a holder of a junior incumbrance, for the˙statute, which seems to be in harmony with the general rule, fixes his rights under the contract.

"The only right of a junior mortgagee, who has not been made a party to the foreclosure of a prior mortgage, is to redeem the property from that mortgage.   It does not matter that on the sale of the property under the foreclosure of the prior mortgage there was a surplus which, with the consent of the mortgagor, was paid to a third mortgagee who was made a party to the suit, and the property subsequently depreciated so that there was no value above the first mortgage.   The middle mortgagee has no claim upon the surplus.   Whether the property has increased or depreciated in value ·since the sale under the first mortgage does not affect his right to redeem, which is the only right he has in the matter."   (Jones on Mortgages, § 1431) ; *McKernan v. Neff,* 43 Ind. 503 ; *Spurgin v. Adamson,* 62 Iowa, 661, 18 N. W. 293 ; *Gaull v. Equitable ·Trust Co.,* 100 Ky. 578, 38 S. W. 1065 ; *Sanger v. Nightingale,* 122 U. S. 176, 7 Sup. Ct. 1109, 30 L. Ed. 1105.

"A subsequent incumbrancer has no claim upon the surplus moneys arising from a sale under a statute foreclosure of which he has no notice ; his lien not being affected by the proceedings.   The land, therefore, will not be discharged from the lien of his incumbrance and transfered to such surplus moneys."   (*Winslow v. McCall and Carley,* 32 Barb. [N. Y.] 241.)

Whether the surplus be the whole sum bid for the property, less the amount of the mortgage with the costs and expenses, de-

pends upon the terms of sale.   If the title put up and sold be the entire estate, without deducting prior incumbrances, the proceeds are primarily applicable to the payment of such prior incum-brances so far as needed for that purpose.   But if only the mort-gage title be sold, or if that title be sold expressly subject to prior incumbrances, the purchaser must account to the mortgagor for the surplus of the purchase money, deducting only the amount of the mortgage with costs and expenses.   *Morton v. Hall,* 118 Mass. 511; *Alden v. Wilkins,* 117 Mass. 216; *O'Connell v. Kelley,* 114 Mass. 97.

In the case at bar the records of the register of deeds disclosed that there were two mortgages on the land at the time the suit to foreclose the first one was commenced, and it must be presumed that all persons interested had notice of the condition of the title, and that all proceedings were had subject to the right of the junior mortgagee to redeem.   The appraisers, whose duty it was to ap-praise the land before the sale, must have made their appraisement with notice of the existing right to redeem, and presumably fixed the value thereof at its value subject to such right of redemption, and of course, the bidders at the sale must be charged with like notice and must be presumed to have bid such sum as the land was worth subject to the right to redeem.   The rule is stated in *Belleville Savings Bank v. Reis et al.* 136 Ill. 242, 26 N. E. 646, as follows:

"When one who is absolutely entitled in his own right to a charge or incumbrance upon land becomes the owner in fee of the same land, with no intervening interest or lien, the charge will at law merge in the ownership and cease to exist.   *   *   *   The premises, in such case, become the primary fund for the payment of the mortgage, and whoever acquires that fund and the mortgage also must be regarded as having applied the fund to the payment of the mortgage.   *   *   *   The indebtedness will be presumed to have been discharged so soon as the holder of it becomes invested with the title to the land upon which it is charged, 'on the prin-ciple that a party may not sue himself at law or in equity.'   The purchaser is presumed to have bought the land at its value, less

the amount of indebtedness secured thereon, and equity will not permit him to hold the land and still collect the debt from the mortgagor."

· The case of *McKernan v. Neff et al.,* 43 Ind. 503, was in principle similar to the case at bar. In that case A. mortgaged certain real estate to B. Afterwards he made a second mortgage on the same real estate to C., and after that a third mortgage to D. C. assigned his note and mortgage to E. B. foreclosed his mortgage, and D. was a party to the proceeding and filed his cross-bill against the mortgagor, but he was not served with process, nor did he appear to the cross-bill. Neither C. nor E. was made a party, nor had they notice of the proceeding. The decree ordered the sale of the real estate and directed the proceeds to be first applied to the payment of B.'s mortgage, second to the payment of D.'s mortgage and the overplus, if any, to be paid to the mortgagor. The real estate was sold on the decree, and D. became the purchaser. B.'s mortgage was paid out of the proceeds, and the residue, with the consent of the mortgagor, was paid to D. ´ After the sheriff's sale the mortgagor conveyed the real estate by warranty deed to D., and D. afterwards sold and conveyed to F., and after the expiration of one year he also received a deed from the sheriff. A. at the time of the decree was insolvent, and so continued to be, and the real estate became so depreciated in value that it was not worth more than the amount of the mortgage of B. Held, that the decree of foreclosure and the sale of the real estate did not affect the rights of E. Held, also, that the equity of the mortgagor and all other parties to the action were barred by the decree and sale; but as to E., the proceedings only had the effect of transferring to the purchaser the interest of the mortgagee in the mortgage foreclosed, and he occupied the position of an assignee. Held, also, that E. could foreclose his mortgage, and redeem the mortgaged premises by paying the amount of B.'s mortgage, as if there had been no foreclosure. Held, also, that E., having lost no rights by the fore-

closure, had no right to any avails of the sale, or any equity that authorized a marshaling of the surplus according to priorities. Held, also, that a depreciation in the value of the real estate since the sheriff's sale could not affect the rights of the parties. It was further held that, if a junior mortgage has been duly recorded, a purchaser of the mortgaged premises on a foreclosure rendered on a senior mortgage will be presumed-to have bid and purchased with reference to the junior mortgage, and with knowledge of the right of the holder of that mortgage to redeem. And a middle mortgagee, who was not a party to proceedings of foreclosure on the senior mortgage, cannot elect to affirm a sale made to the junior mortgagee, on a decree rendered upon the senior mortgage in such proceedings, and recover of the junior mortgagee the surplus after paying the senior mortgage.

In the case of *Greensburg Fuel Co. et al. v. Irwin Natural Gas Co.*, 162 Pa. 78, 29 Atl. 274, certain property was sold; it was agreed that the sale did not affect a mortgage of a large amount held by the Southwest Natural Gas Company; at the sale this company holding the lien purchased the property, and thereafter claimed that it was entitled to share *pro rata* with the other creditors in the distribution of the proceeds. In the opinion, Mr. Justice McCollum says:

"The property levied on in this case was sold subject to any mortgage or mortgages legally existing thereon, and the only mortgage upon it was held by the Southwest Company. It was so sold on writs evidently controlled by the mortgagee and purchaser at the sheriff's sale. A mortgage, the lien of which is not discharged by a sheriff's sale, cannot share in the proceeds of the sale. In such case all that the purchaser takes by the sale is the equity of redemption, and his bid is for such sum as he is willing to pay for the property above the amount of the mortgage debt. If the purchaser is the mortgagee, his mortgage is in equity satisfied; his claim is paid in the purchase of the property sold subject to it."

The same principle was involved in the case of *Trimmier v.*

*Vice,* 17 S. C. 499, 43 Am. Rep. 624, where Mr. Chief Justice Simpson, who delivered the opinion of the court, says:

"The purchase of the equity of redemption unites the equitable title under the mortgage and the right to redeem in the same person; and, where there is no intervening claim, merger is the result, and the mortgagee becomes the owner in fee, with nothing left for the mortgage to operate upon. * * * In addition to this, the right of the mortgagor to redeem being the only interest that can be sold by a judgment junior to the mortgage, the purchaser at such sale, whether he be the mortgagee or a stranger, is supposed to give the amount of his bid for that interest, over and above the mortgage debt, leaving the land, when purchased by a stranger, still subject to be sold for the mortgage debt, and, when purchased by the mortgagee, to be applied in satisfaction of his debt, which by operation of law is thereby extinguished. As we have already said, this is the admitted doctrine where the entire property has been purchased by the mortgagee."

Further discussing the same proposition, the learned . Chief Justice continues:

"In the case of *Moss v. Bratton,* 5 Rich. Eq. (S. C.) 3, the court held that Bratton, who bought at sheriff's sale under an execution junior to the mortgage, obtained his title incumbered with the lien; and though he did not become personally liable for the mortgage debt, yet the land in his hands was specifically bound, so far as it might suffice for the payment of the debt. The only interest sold was the right of the mortgagor to redeem. No doubt Bratton supposed that the land was worth the amount' he bid for this interest and the mortgage debt besides. If it turned out upon a resale for foreclosure that he was mistaken, this was an error of judgment on his part, and his misfortune, to which all men are liable."

The reasoning in the foregoing cases is applicable to the case at bar. All of the bidders at the foreclosure sale—and the record shows there were others besides the plaintiff in error—must have been bidding with full knowledge of the condition of the title, and that they would take the land offered for sale subject to the right of plaintiff in error to redeem, and no doubt governed their bids accordingly. At least, this is the presumption that from the

record before us must prevail. The plaintiff in error bases his right to the surplus solely upon the proposition that he is entitled to it by reason of his junior mortgage. This position we believe to be untenable. His plea of intervention was filed shortly after the decree was rendered and before the sale, but summons was not issued thereon until after the sale. Under such circumstances the mere filing of the petition, without issuance or service of summons, would not constitute notice to the bidders, or any one interested in the land that the plaintiff in error had abandoned his right to redeem. The land would proceed to sale entirely unaffected by the petition, and the sale must have been subject to the right of redemption by the plaintiff in error. Of course, at the time the petition was filed there was no means of telling whether there would be a surplus or not, and so at that time plaintiff in error really had no cause of action in the form in which he brought it. The relief he seeks is purely equitable. If he had alleged in his petition that the land sold for its full value notwithstanding the outstanding right to redeem, or such other facts as would appeal to the conscience of a court of equity, he would possibly be entitled to the relief prayed for. Having failed to do this, and there appearing to be no equity supporting his right to a lien on the surplus, the judgment of the court below must be affirmed.

All the Justices concur.