## Dowling et al. v. Springer et al.

*100 P. 2d 278.*

No. 28706.   March 12, 1940.

Abernathy & Howell, of Oklahoma City, for plaintiffs in error.

Archibald Bonds, of Oklahoma City, and J. D. Holland, of Norman, for defendants in error.

HURST, J. Plaintiff Dickson purchased a tract of land in Cleveland county, having the conveyance made to the defendant Ford. Shortly thereafter he purchased a mortgage against the same land, having it assigned to plaintiff Dowling. Dowling instituted this action to foreclose the mortgage, and Dickson was thereafter made a party plaintiff. Defendants Springer, Manley, and Foster Minerals Corporation were purchasers of mineral interests from a grantee of the mortgagor, and defendant Indian Territory Illuminating Oil Company was the owner of an oil and gas mining lease covering the land. The interests of these defendants were acquired after the recording of the mortgage, but prior to the purchase by plaintiff Dickson of the land and mortgage. Their minerals deeds and the lease contained warranties of title and against incumbrances, and made no mention of the mortgage, although all the defendants knew of its existence. The title to the land passed from the mortgagor through several persons before vesting in defendant Ford. All these conveyances apparently were made subject to the mortgage except the deed to Ford, which was a quitclaim deed and in which no mention of the mortgage was made. The trial court adjudged the title to the land and mortgage merged as to the defendants above named, except Ford, and denied foreclosure as to their mineral interests and the oil and gas lease. Plaintiff appeals.

The sole question argued is whether a merger of the mortgage with the legal title to the land occurred as to the named defendants, except Ford, prior to or when Dickson became the owner of both. Defendants urge that a merger of the two estates occurred (1) by the payment of the mortgage by Dr. Sturgis, the grantor in the quitclaim deed to Ford, and (2) by the purchase of both the mortgage and the land by Dickson. The first presents a question of fact, the second a question of law.

1. The contention that the mortgage was paid off by Dr. Sturgis rests almost entirely on the testimony of defendants Springer, Manley, and one Brendle, who originally took the oil and gas lease owned by Indian Territory Illuminating Oil Company, to conversations had by them with Dr. Sturgis. All three testified to separate conversations in which they requested, or demanded, that he take care of the mortgage, and in which he stated that he had paid it. Brendle testified that Dr. Sturgis' portion of the bonus received for the lease was applied on the mortgage. Dr. Sturgis was a professor of Latin at Oklahoma University, and while he testified that his memory on these outside business matters was somewhat hazy, and his records of them very imperfect, he was positive in his assertion that he never paid the mortgage, and that he never made the statements attributed to him. He admitted that he loaned a friend of his, one Henderson, who was negotiating for the purchase of the mortgage, a portion of the purchase price therefor. This statement is corroborated by Henderson. Defendants assert that in this transaction Henderson acted as agent for Sturgis, but this is denied by both Sturgis and

Henderson. The note, when transferred to Henderson, showed no payment on the principal sum, although Brendle had testified that Dr. Sturgis' share of the lease bonus, $300, had been applied on it. Sturgis denied this payment, and the records of the bank handling the transaction bore out his denial. Henderson testified that he put the mortgage in the bank as security for the payment of the loan from Dr. Sturgis, and produced the canceled note, which he testified he paid the day after he sold the mortgage to Dickson. The party who sold the mortgage testified that so far as he knew the sale was to Henderson. All these witnesses were disinterested, while Springer and Manley were directly interested in the outcome of the action, and Brendle was, as he admitted, interested because he had warranted the title of the oil and gas lease to Indian Territory Illuminating Oil Company. We think the evidence establishes conclusively that no merger was effected by Sturgis. The argument made that payment of the mortgage by the owner of the land, primarily liable for the mortgage debt, extinguishes the mortgage, and the cases cited in support thereof, are therefore without factual basis for support.

2. Defendants also contend that a merger was effected as a matter of law when Dickson became the owner of both the land and the mortgage, regardless of his intent to prevent a merger thereof.

The equitable doctrine of merger of estates is that where the legal estate, for example the fee, and an equal or lesser equitable estate in the same property, for example a mortgage, are acquired by the same person, the equitable estate merges with the legal, in the absence of an intention that they shall not merge. But if it appears, from the circumstances surrounding the acquisition of the two estates, such as the taking of title to one of them in the name of a trustee, or by language inserted in the instrument of transfer, that the intention of the party acquiring is that such estates shall not merge, or if it appears that such party will be benefited by keeping both estates alive, no merger will result. Pomeroy's Equity Jurisprudence (4th Ed.) § 788 et seq.; Jones on Mortgages (8th Ed.) § 1080; 10 R.C.L. 666; 21 C. J. 1033. This doctrine is not applicable, however, where the owner of the fee subject to the mortgage, who is himself the principal and primary debtor and liable personally and primarily for the debt secured thereby, attempts to pay off the mortgage and keep it alive. Equity will not under such circumstances prevent the merger. This latter rule applies to a mortgagor who continues to be the primary debtor, and also to his grantee who expressly assumes and agrees to pay the mortgage as part of the consideration for the land. Pomeroy's Equity Jurisprudence (4th Ed.) § 797. Defendants seek to apply this latter rule to the plaintiff Dickson, by assuming that when the mortgagor sold the land the mortgage was deducted from the purchase price, and that such deduction of the mortgage occurred at each subsequent transfer of the legal title, so that each grantee became primarily liable for the payment thereof, and the land remaining after the sale of the minerals and lease is the primary fund or asset out of which the mortgage debt must be made. In support of this contention, defendants cite Sanderson v. Turner (1918) 73 Okla. 105, 174 P. 763, and Johnson v. Davis (1930) 146 Okla. 170, 293 P. 197, also cases collected in note to Hult v. Temple (Iowa, 1926) 208 N. W. 70, 46 A.L.R. 317.

In Sanderson v. Turner, supra, Turner, owner of 160 acres of land, conveyed 80 acres thereof to Sanderson and Fox, who assumed and agreed to pay a mortgage which covered the entire 160 acres. Thereafter the land was conveyed by mesne conveyances, all for a nominal consideration, and all subject to the mortgage, until it was reconveyed to Turner, who paid a nominal sum therefor. Thereupon Turner paid off the mortgage, and sued Sanderson and Fox to recover the amount thereof on their

assumption agreement. This court held that where land is sold subject to an incumbrance, and the amount thereof is deducted from the purchase price, an assumption of the incumbrance will be implied in the absence of an express assumption; that the lands so conveyed become the primary fund for the satisfaction of the incumbrance, and that when it is evident that it was the intention of the parties that the amount of the mortgage should be deducted from the consideration in each conveyance, the assumption of the indebtedness passes to each grantee, and that the person ultimately becoming the owner free from the incumbrance should assume and pay it off. It held that, therefore, Turner took the land charged with the incumbrance and reassumed the obligation to pay it off, and therefore could not recover from Sanderson and Fox on their assumption agreement, and thus receive back the lands free from the incumbrance. In Johnson v. Davis, supra, this court recognized and applied the same rule, but held that it applied only upon the express deduction of the mortgage debt from the purchase price, and did not make a mere purchaser of the equity of redemption personally liable for the mortgage debt, and that such personal liability did not devolve on the purchaser of mortgaged land unless it was established that the mortgage debt was deducted from the purchase price, or that there was an express assumption thereof by the purchaser. It further held that the plaintiff's cause of action did not arise until he had paid the deficiency judgment arising from the sale of the mortgaged premises. In Hult v. Temple, supra, it was held that in the absence of some other equitable consideration, a purchase of a first mortgage by one who acquired title to the land covered thereby through the foreclosure of a junior mortgage amounted to the extinguishment of the debt secured by such first mortgage, and that the purchaser could not collect such debt from the mortgagor without first applying the land covered thereby to its satisfaction.

Defendants also cite Pomeroy's Equity Jurisprudence (4th Ed.) § 1224, dealing with contribution and exoneration as between the mortgagor and his subsequent grantees, and the priority in the application to the payment of the mortgage debt of parcels conveyed by the mortgagor to successive grantees. Other cases are cited, including Kahn v. McConnel (1913) 37 Okla. 219, 131 P. 682, and Zorn v. Van Buskirk (1925) 111 Okla. 211, 239 P. 151, but the facts as well as the principles of law therein applied make them inapplicable to the question presented here. We do not find in the record any evidence justifying the assumption that there was a deduction of the amount of the mortgage debt from the purchase price when the mortgagor sold the mortgaged land, or that such deduction was made on any subsequent transfer thereof. Therefore, the basis for the application of the rule announced in Sanderson v. Turner, supra, is wholly lacking. The other authorities above mentioned cited by defendants are not, in our opinion, in point here.

Plaintiff contends that the facts in the present case do not justify the application of the doctrine of merger, but are such as invoke the rule of inverse order of alienation or marshaling of assets. Plaintiff concedes that under that rule the land held for his benefit by the defendant Ford must be first applied in payment of the mortgage debt, but contends that no reason exists why the interest of the other defendants, purchased, so far as the record shows, under circumstances which entitle them to no peculiar favor in equity, should escape liability in event that portion held by defendant Ford be not sufficient to satisfy the mortgage debt. The plaintiff, by taking title to the residue of the mortgaged property in the name of Ford, and title to the mortgage in the name of Dowling, sufficiently indicated his intention to prevent a merger. In addition, he testified that such was

his intention, and that such action was taken after consultation with and upon advice of his attorneys. Having purchased only part of the mortgaged property, his right to enforce the mortgage against the remainder is not extinguished. Jones on Mortgages (8th Ed.) § 1081; Pomeroy's Equity Jurisprudence (4th Ed.) § 1212; 19 Am. Jur. 591, § 137. No facts are established, nor is any sufficient reason advanced, to invoke the interposition of equity to relieve the interests of defendants from the payment of the mortgage, should the remainder of the land held in the name of Ford prove insufficient to satisfy it. Defendants' purchases of the mineral rights and the oil and gas lease were made subject to the mortgage, and we can perceive no injustice resulting to them because of the purchase of the mortgage and the remainder interest in the mortgaged premises by the plaintiff Dickson as shown in the record. For cases involving similar facts, in which the merger of the legal title and mortgage was denied, see O'Reilly v. McLean et al. (Utah, 1934) 37 P. 2d 770; Folda Real Estate Co. v. Jacobson (Colo. 1924) 223 P. 748; Imar Mortg. Corp. v. Ticoli Realty Corp. (1931) 251 N.Y.S. 71; Medsker v. Parker (1880) 70 Ind. 509; Meacham v. Steele (1879) 93 Ill. 135; Irvine v. Shrum (Tenn. 1896) 36 S. W. 1089; Moats v. Thompson (Pa. 1925) 129 Atl. 105; Salvage v. Haydock (N. H. 1896) 44 Atl. 696; Putney Realty Co. v. Frank (Mo. 1932) 52 S. W. 2d 1025, 46 A.L.R. 322, note.

The trial court should have applied the rule of inverse order of alienation, under which the land and the residue of the mineral interest owned by Dickson, but standing in the name of defendant Ford, should be first sold, and if by such sale the mortgage is not satisfied, then the interests of the defendants should be sold in the inverse order of alienation until a sum sufficient to satisfy the mortgage has been realized. Hutson v. Illinois Bankers Life Assur. Co. (1939) 185 Okla. 573, 95 P. 2d 238; Bailey v. State (1919) 72 Okla. 203, 179 P. 615.

Reversed, with directions to the trial court to render judgment for the foreclosure of the mortgage, and the sale of the land and interests therein in the inverse order of alienation, in accordance with the views herein expressed.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and CORN, J., absent.