FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, CHICKASHA, OKLA-HOMA, Appellee,

v.

Rosalee NATH, Treasurer of Grady County, Oklahoma, and Board of County Commissioners of Grady County, Oklahoma, Appellants.

No. 71255.

Supreme Court of Oklahoma.

Sept. 15, 1992.

As Corrected Sept. 15, 1992.

Max A. Martin, Asst. Dist. Atty., Melvin R. Singleterry, Dist. Atty. Chickasha, for appellants.

Ron Dirickson, Huckaby, Fleming, Frailey, Chaffin & Darrah, Chickasha, for appellee.

OPALA, Chief Justice.

The issues presented on certiorari are: (1) Did the trial court err when it implicitly applied the equitable "anti-merger doctrine" [1] to keep a mortgage lender's [First Federal's] [2] first mortgage alive and superior to unforeclosed personal property tax liens *after* First Federal's earlier foreclosure of that first mortgage in a proceeding in which a tax lienholder [County] was not joined and First Federal purchased the mortgaged property at the sheriff's sale? and (2) Were County's unforeclosed personal property tax liens extinguishable *sans* foreclosure as a "cloud" upon First Federal's title? [3] We answer both questions in the negative.

## I

## THE ANATOMY OF LITIGATION

When First Federal foreclosed its first mortgage on property in Grady County [the property],[4] it failed to join County [5] as

---

1. For an explanation of the equitable "anti-merger doctrine," *see infra* Part II A. Neither the trial court nor the parties litigant *identified* the anti-merger doctrine *by name* as the ground for preserving First Federal's mortgage as a viable superior lien *after* First Federal had purchased the property at sheriff's sale. We supply the applicable analysis of the quiet title decree to explain the equitable theory applied below for the *nisi prius* implicit ruling against legal merger of the first mortgage with the mortgagee's subsequently acquired legal title.

2. *First Federal Savings & Loan Association,* Chickasha, Oklahoma was the plaintiff below and is appellee here. It was also the plaintiff in a prior foreclosure action in the District Court, Grady County, Case No. C–87–96.

3. First Federal treated the proceeding as one to quiet its title to the property; it viewed the outstanding tax liens as a cloud upon its title, removable by a quiet title decree. The trial court granted First Federal the relief it sought. *See* Part II B and note 23 for the explanation that First Federal considered its suit to be authorized by 68 O.S.1981 § 24305.

4. The parties stipulated that the following facts govern this dispute:

 "1. Appellee obtained Mortgage covering certain real property. The Mortgage was recorded on January 16, 1979.

2. The owner of real property failed to pay personal property taxes for years 1983, 1984, 1985, 1986 and 1987.
3. That such personal property taxes for each year became liens in favor of the Appellants upon real property on or about July 1 of the following year.
4. That during 1987 Appellee filed action foreclosing its Mortgage.
5. That Appellants were not joined as parties to foreclosure action.
6. That the real property was sold to Appellee at Sheriff's Sale in foreclosure proceeding.
7. That the sales price of property was not sufficient to satisfy Appellee's judgment against owners.
8. That the foreclosure proceeding did not foreclose Appellants' personal property tax liens because Appellants were not party to the foreclosure proceeding.
9. That Appellee then filed a separate civil action against Appellants requesting Court (a) to determine Appellee's Mortgage had priority over Appellants' personal property tax lien, (b) to quiet Appellee's title as to Appellants' tax liens, (c) to order Appellant, Rosalee Nath, County Treasurer, to release the personal property tax liens as to property in question.
10. The trial court granted the relief requested by Appellee.
11. That Appellants timely filed Motion for New Trial which was overruled on May 27, 1988."

5. The junior lienholders are Rosalee Nath, Treasurer of Grady County, and the Board of County

a defendant in the foreclosure.[6] County holds liens on the property for the mortgagor's unpaid personal property taxes.[7] First Federal bought the property at the sheriff's sale, but the proceeds did not satisfy the amount that was due upon its judgment.

■ First Federal, which sought below the court's declaration that its first mortgage survived the sheriff's sale and had priority over County's unforeclosed personal property tax liens,[8] also prayed that the court extinguish County's interest in the property by ordering the tax liens released without foreclosure. County defended against the suit.[9] The *nisi prius* court granted First Federal the relief it sought.[10]

■ County's bid for new trial proved unsuccessful. On appeal the *nisi prius* decision was affirmed.[11] On rehearing before the Court of Appeals, *County pressed, for the first time, the same argument as that in its petition for certiorari now before us—namely, that the agreed facts in the record show there was error in allowing First Federal to preserve its mortgage lien past the earlier foreclosure.*[12] Rehearing was denied; we granted certiorari.

---

Commissioners of Grady County, all of whom were defendants below and are appellants here. We refer to the county taxing authorities as County.

6. While in the parties' stipulation, *supra* note 4, there is no specific explanation why First Federal left out County from the foreclosure, the record brought here for review does not show (a) *County's own tax liens to be superior to the first mortgage* or (b) *the trial court's implicit finding against allowing legal merger to be clearly contrary to the weight of the evidence.*

7. Personal property tax liens are governed by 68 O.S.1981 § 24305 and 68 O.S.Supp.1984 § 24306. The pertinent terms of the latter provide:
"A. Within thirty (30) days after publication of the general notice required in the provisions of Section 24305 of this title, the county treasurer shall cause a personal tax lien record to be made in a docket for such purpose, showing the names and addresses of all persons ... owing delinquent personal taxes, setting forth the delinquent years and amounts due and unpaid, together with penalty and costs.... *Said liens are inferior to all other liens, conveyances or encumbrances filed prior thereto, on real or personal property.* The tax lien shall be a lien on all personal and real property of the person ... owing the delinquent tax for a period of *seven (7) years ...*"
This statute was amended and renumbered as 68 O.S.1991 § 3103, effective Jan. 1, 1992. Citations in this opinion are to the law in effect when suit was filed in 1988.

8. A lienholder may bring an equitable proceeding to determine the validity and priority of his lien. *Bank of Quapaw v. Denney,* 98 Okl. 279, 225 P. 362 (1924). *See East Gadsden Bank v. Bagwell,* 273 Ala. 441, 143 So.2d 438, 440 (1962);

*Shafer v. Wilsonville Elevator Co.,* 121 Neb. 280, 237 N.W. 155, 157 (1931). The pertinent terms of 68 O.S.1981 § 24305, which authorizes a statutory action for similar relief, are:
"... From and after the entry of such tax upon such tax lien docket, *any person claiming any interest in any land* or personal property can *sue the county treasurer and board of county commissioners* in the district court to determine the *validity* or *priority* of said lien." [Emphasis supplied.]
This statute was amended and renumbered as 68 O.S.1991 § 3102, effective Jan. 1, 1992.

9. Answering by general denial, County *clearly opposed* the quest for cancellation and discharge of its liens.

10. The journal entry also "corrects" a scrivener's error in the foreclosed property's legal description. That error is not pertinent to the issues on review in this case.

11. The Court of Appeals refused to consider whether the trial court wrongly cancelled the tax liens and ordered them released. It held these arguments unavailable since they were not articulately pressed at trial. There was error in this conclusion. The law leaves an appellate court free to consider this public-law issue unfettered by deficient *nisi prius* advocacy. *See our explanation in* notes 34 & 35, *infra.*

12. County suggests inferentially that there are no equitable grounds to support the trial court's invocation of the anti-merger doctrine. This position, taken for the first time in its petition for rehearing before the Court of Appeals, (a) is inconsistent with County's earlier *nisi prius concession that the first mortgage retained its superiority* after foreclosure and (b) is unsupported by any record proof that the trial court's finding against legal merger, implicit in its decree, was clearly contrary to the weight of the evidence. *See infra* note 32.

## II

WHERE CIRCUMSTANCES MAY WARRANT, EQUITY WILL INTERPOSE ANTI–MERGER RELIEF TO KEEP A MORTGAGE ALIVE, AFTER ITS EARLIER FORECLOSURE, VIS–A–VIS AN INFERIOR LIEN OF ONE WHO WAS NOT A PARTY TO THE PRIOR FORECLOSURE

### ELEMENTS OF THE ANTI–MERGER DOCTRINE

■ A common-law rule, made statutory by 42 O.S.1981 § 22,[13] teaches that when two estates in property in the same right [14] meet in the same person, a merger takes place.[15] By Oklahoma law—explained in *Yoder v. Robinson* [16]—it is firmly settled that when the owner of an equitable interest acquires the legal title to the property, the merger of title that follows *at law* does

not always meet with *chancery's recognition.* Equity's interposition to prevent the effect of merger at law is called the "anti-merger doctrine."[17] *Yoder* teaches that the *intention* of the person acquiring the two interests controls.[18] If the *intention* that the estates not merge is *divinable,* it will be *followed* in equity; and even when it is *not* clearly expressed, the intention that the interests not merge will be *presumed,* if the circumstances indicate the party acquiring both interests would *benefit* from avoiding a merger.[19]

■ When the mortgagee fails to join an interest-holder as defendant in a mortgage foreclosure and then purchases the mortgaged property at sheriff's sale, equity will, in a proper case, afford relief to keep the mortgage alive vis-a-vis the omitted party's interest.[20] Although legal merger may be avoided in equity and the foreclosed mortgage preserved, an *un-*

---

**13.** The pertinent terms of 42 O.S.1981 § 22 provide:

"The *sale* of any property on which there is a *lien,* in satisfaction of the claim secured thereby ... *extinguishes the lien* thereon." [Emphasis supplied.]

**14.** *See Citizens Bank & Trust Co. v. Watkins,* 215 N.C. 292, 1 S.E.2d 853, 856 (1939). If one estate is held *in trust* and another *in the owner's individual capacity,* merger does not apply.

**15.** Merger had its inception during the feudal period in England before land was conveyed by written instruments. The feudal maxim, *Nemo potest esse dominus et tenens* [No one can be both lord and vassal], ruled the day. Soon law courts blindly applied merger whenever a person held consecutive estates in the same right, even if it destroyed the ownership interest of the holder. *Seventeenth century courts of equity intervened by creating an exception to the rule applied rotely by the law courts.* A. Burkhart, FREEING MORTGAGES OF MERGER, 40 Vanderbilt L.Rev. 283, 289 (1987). Burkhart explains that when courts routinely apply merger to *mortgage interests,* they unnecessarily destroy valuable property rights for some and wrongfully create a windfall for others. *Equity's interposition prevents this harsh result. Burkhart, supra* at 285.

**16.** 45 Okl. 165, 145 P. 775 (1915).

**17.** The term "merger doctrine" is a confusing misnomer sometimes used as a synonym for the "anti-merger doctrine." *See, e.g., Citizens Sec.*

*Bank of Bixby v. Courtney,* 572 P.2d 1302, 1304 (Okl.App.1977).

**18.** *Yoder, supra* note 16 145 P. at 777. *See Ferguson v. Hilborn,* Okl., 402 P.2d 914, 921 (1965); *Lashley v. Dexter,* 133 Okl. 297, 272 P. 427, 429 (1928). *See also* 3 J. Pomeroy, EQUITY JURISPRUDENCE § 788 (5th ed. 1941).

**19.** *Paris Bank of Texas v. Custer,* Okl., 681 P.2d 71, 77 (1984); *American–First Title & T. Co. v. First Fed. S. & L. Ass'n, Okl.,* 415 P.2d 930, 940 (1966); *Dowling v. Springer,* 186 Okl. 656, 100 P.2d 278, 279–280 (1940).

**20.** *State v. Loose,* 204 Okl. 88, 227 P.2d 402, 404 (1951); *Darks v. Kansas City Life Insurance Co.,* 181 Okl. 165, 72 P.2d 810, 811 (1937); *Horr v. Herrington,* 22 Okl. 590, 98 P. 443, 445 (1908). Scenarios that would support the anti-merger doctrine's application are *varied.* Generally, a lienholder's inadvertent omission from foreclosure will afford the basis for equitable relief. *See, e.g., Loose, supra* 227 P.2d at 405; *Darks, supra* 72 P.2d at 811; *Horr, supra* 98 P. at 445. If the mortgagee is *at fault or negligent* in failing to include a junior encumbrancer in the prior proceeding, equity will nonetheless apply the anti-merger relief *if the other party has not been prejudiced by its earlier omission. Rives v. Stanford,* 188 Okl. 108, 106 P.2d 1101, 1102 (1940). An omitted party is not always harmed by its non-joinder in foreclosure; its equity of redemption remains unextinguished. *Rives,* supra 106 P.2d at 1104; *Saum v. Hine,* 178 Okl. 151, 61 P.2d 1059, 1063 (1936). For the definition of redemption, *see infra* note 38; for the terms of 42 O.S.1981 § 19, which gives an inferior lien-

*foreclosed junior encumbrance is not eo ipso extinguished. The mortgagee is afforded an opportunity to foreclose its mortgage once again, this time against the previously omitted lien.*[21]

## B

### FIRST FEDERAL'S EQUITABLE QUEST TO CURE THE PROBLEMS CAUSED BY ITS OMISSION OF COUNTY FROM THE EARLIER FORECLOSURE

When First Federal learned it had left out a junior lienholder from its foreclosure suit, it sought corrective action below. Its quest may have paraded as a proceeding under 68 O.S.1981 § 24305[22] to determine the continued effectiveness of the liens and the order of their priority.[23] As we characterize the instant post-foreclosure contest, *it was nothing more or less* than an equity suit for a declaration that: (1) First Federal's mortgage lien *did not* merge in its legal title but survived as the first lien upon the property and (2) the unforeclosed County tax liens not only stand inferior to the surviving First Federal lien but are also

extinguishable *sans* foreclosure as a "cloud" *which* should be ordered removed.

County argues on certiorari that the record shows *no equitable ground* for keeping First Federal's mortgage alive.[24] It directs our attention to a Court of Appeals decision in *Creditthrift of America, Inc. v. Amsbaugh*[25] where that court refused to allow the anti-merger doctrine in favor of a lienholder who *admitted an intentional* failure to join in the foreclosure action a party with a known interest.[26] County seems to suggest we may infer from agreed fact No. 5[27] that First Federal had failed to interpose *a valid equitable ground* for County's omission from foreclosure.

We do not concur that any agreed fact in the record of this appeal deprives First Federal of the anti-merger doctrine's protection and requires reversal of the trial court's implicit finding that disallowed merger. *There is no proof that First Federal's failure to join County in the earlier foreclosure was attended by some inequitable conduct.* In short, the trial court's finding against legal merger, implicit in its

---

holder the right to redeem the property from the superior lien, *see infra* note 43.

**21.** An action to *foreclose the mortgage against a previously omitted junior encumbrancer* is the *proper remedy* for an earlier incomplete or noninclusive foreclosure—i.e., one where all those with an equity of redemption have not been joined in the suit. *Darks, supra* note 20, 72 P.2d at 811. *See infra* Part III. In some extant cases *the court allowed the earlier incomplete foreclosure suit to be reinstated by an amended petition* even after the lapse of several years. *See Rives, supra* note 20, 106 P.2d at 1103.

**22.** *See supra* note 8 for the pertinent terms of 68 O.S.1981 § 24305.

**23.** First Federal treated its action as one to quiet title, but contended that it was authorized by 68 O.S.1981 § 24305.

**24.** The record tendered for our review consists of the court clerk's file, a stipulation of facts prepared for the appeal by the parties and the transcript of the May 27, 1988 hearing on County's quest for new trial below.

**25.** Okl., 773 P.2d 1287 (Okl.App.1988), *cert. denied* 1989.

**26.** The case *sub judice* is distinguishable from *Creditthrift.* The mortgagee in *Creditthrift* foreclosed its mortgage without naming a subordinate lender, the second mortgagee. When the latter sought vacation of the sheriff's sale, the sale was set aside by agreement. Although the second mortgagee did receive notice of the new sheriff's sale, the first mortgagee *admitted that it had intentionally* failed to make the second mortgagee a party to the foreclosure. The trial court found the first mortgagee guilty of *intentional misconduct* and refused to interpose its equity powers to prevent the merger of the first mortgage lien with the purchaser's legal title acquired at sheriff's sale. The appellate court affirmed, *noting the uniqueness of the facts.* We approved its opinion for publication.

*Creditthrift* stands as authority for withholding equitable relief *from those who do not come to chancery with clean hands or from those who seek to perpetrate a fraud. See Wickham v. Simpler,* 198 Okl. 580, 180 P.2d 171 (1947). *See also* POMEROY, *supra* note 18 at § 794.

*The record in the present case does not reflect any misconduct by First Federal nor suggest that it is undeserving of equitable relief.*

**27.** Fact No. 5: "Appellants were not joined as parties to [the] foreclosure action." *See supra* note 4 for the statement of agreed facts.

decree, cannot be declared as clearly contrary to the weight of the evidence.[28]

 *Legal error may not be presumed from a silent record; it must be affirmatively demonstrated.*[29] On review, we always indulge in the presumption that a trial court's decision is correct; every fact not disputed by the record must be regarded as supporting the trial court's judgment.[30] County has not *met its burden*[31] to provide for our review a record *that would pierce or overcome the presumption of nisi prius correctness that attaches by force of law.*[32] In short, nothing in this record affirmatively demonstrates error in shielding First Federal's foreclosed mortgage by interposition of equity's anti-merger doctrine.

### III

THE *NISI PRIUS* DECLARATION AGAINST LEGAL MERGER BINDS COUNTY BUT DOES NOT ENTITLE FIRST FEDERAL TO THE LIENS' CANCELLATION AND RELEASE *SANS* FORECLOSURE

 At *nisi prius* County defended against First Federal's plea for extinguishment of its tax liens.[33] Although it may

---

**28.** No transcript of evidentiary proceedings is available to us, but the journal entry recites that the court heard proof. This is confirmed by the district attorney's statement that he was not present at the "original hearing." (May 27, 1988 Transcript [Transcript] at 3.)

**29.** *Hamid v. Sew Original,* Okl., 645 P.2d 496, 497 (1982). *See Stewart v. Rood,* Okl., 796 P.2d 321, 324 n. 2 (1990); *Oxley v. City of Tulsa,* Okl., 794 P.2d 742, 748 (1990); *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936 (1989); *Reeves v. Agee,* Okl., 769 P.2d 745, 753 (1989); *Ferguson v. Ferguson Motor Co.,* Okl., 766 P.2d 335, 338 n. 8 (1988); *Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 725 n. 16 (1986); *Eckel v. Adair,* Okl., 698 P.2d 921, 924 (1985); *Cox v. Smith,* Okl., 682 P.2d 228, 231 n. 4 (1984); *Johnson v. Johnson,* Okl., 674 P.2d 539, 546 (1983).

**30.** *Davidson v. Gregory,* Okl., 780 P.2d 679, 683 n. 17 (1989). *See, e.g., Homeland Realty Co. v. Robison,* 39 Okl. 591, 136 P. 585 (syllabus ¶ 6) (1913); *Cox v. Warford,* 34 Okl. 374, 126 P. 1026, 1027 (1912); *Farmers' & Merchants' Bank of Coweta v. Sharum,* 21 Okl. 863, 97 P. 555, 556 (1908); *Board of Com'rs of D County v. Wright,* 8 Okl. 190, 57 P. 203 (syllabus ¶ 3) (1899).

**31.** The appellant bears *total responsibility* for including in the appellate record *all* materials necessary for corrective relief. *Hulsey, supra* note 29 at 936; *Eckel, supra* note 29 at 924; *Hamid supra* note 29 at 497.

**32.** County's suggestion that the record demonstrates no equitable grounds for keeping the first mortgage alive after the sheriff's sale conflicts with its own earlier concessions. It had conceded that (1) First Federal's "mortgage does have priority over County's personal property tax liens" and (2) this "priority was not lost by failure to join [the] County in the foreclosure action." (Transcript at 4; appellant's brief at 3–4.)

---

Generally, uncontroverted extra-record facts admitted in the briefs may be regarded as supplementing the appellate record. *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 n. 8 (1986). County's appellate counsel states that his client *disagrees with his analysis of the case,* but County has not attempted to retract its attorney's concessions for fraud, mistake, or lack of authority. *Ordinarily, the admissions of one's attorney in the line of his duties, are binding on the client. Dorrance v. McAlester,* 1 Ind.T. 473, 45 S.W. 141, 143 (1898). Admissions merit recognition when they are made *deliberately and intelligently* during court proceedings, especially when they are *reduced to writing. See Oklahoma Natural Gas v. Walker,* Okl., 269 P.2d 327, 330 (1954); *Wester v. Lucas,* 177 Okl. 147, 57 P.2d 1179, 1182 (1936); *Aetna Bldg. & Loan Ass'n v. McCarty,* 78 Okl. 187, 189 P. 357, 358 (1920).

Some extant jurisprudence holds that a county attorney may not agree to a judgment against a county and that a judgment based upon a county's answer which confesses judgment, or facts on which the claim is based, will not withstand a collateral attack. *See, e.g., Sinclair Prairie Pipe Line Co. v. Excise Board,* 173 Okl. 375, 49 P.2d 114, 119 (1935); *Protest of Kansas City Southern Ry. Co.,* 157 Okl. 246, 11 P.2d 500, 504 (1932). *But see Choctaw County Excise Board v. St. Louis–San Francisco Ry. Co.,* Okl., 456 P.2d 545, 547–548 (1969), where the court confines these earlier holdings to cases in which there was a *lack of in personam jurisdiction over the county.*

*We need not decide today whether counsel's concessions on legal points are binding upon County here.* Even if we assume that County may be relieved from the legal effect of its attorney's *nisi prius* concessions, it has given us no record on the basis of which we could fashion some theory for reversing the trial court's implicit finding that disallows merger.

**33.** For our explanation of County's defense, *see supra* note 9.

not have clearly articulated the correct legal theory in opposition to its adversary's claim for their "removal" as an unauthorized "cloud,"[34] County is benefited here by a public-law exception[35] to the general rule that an appellate court will not review a case on a theory different from that presented in the trial court. *County's interest in its tax liens is a public-law issue. Within the parameters of the noted exception we may, and do today, supply here the correct authority for reversal of that part of the trial court's decree which cancels the inferior County liens.*

■■■ First Federal urges that (1) an action such as this one—under 68 O.S.1981 § 24305—rather than a new foreclosure is the most efficient way to resolve the problems caused by County's omission from the earlier foreclosure and (2) everything that re-foreclosure of First Federal's mortgage

could accomplish has already been done in this case. *We reject the notion that another foreclosure of First Federal's mortgage is unnecessary* to extinguish the County liens. The mortgage foreclosure statute[36] provides that all parties who have liens upon mortgaged property may be joined in the proceeding. County has at least two important interests to be protected: (1) it may insist that the land's sale be conducted fairly and for a fair value[37] and (2) it may timely redeem the property from the superior lien.[38] *This may not be accomplished except by foreclosure.*

First Federal urges that we would reach "an absurd result" if we were to require a re-foreclosure of its mortgage. It contends that when the trial court ruled in this case it considered the earlier foreclosure's appraisal and the results of the sheriff's sale.

**34.** At *nisi prius* County did not identify with legal precision the exact impediment to the trial court's cancellation of its tax liens, but in a new trial motion and *in its appeal County assigned the liens' discharge as error.* The issue was hence clearly preserved for review. Since County's interest in its liens is a public-law matter, the appellate court was incorrect when it declined to reach for review the assigned error of the trial court in extinguishing the tax liens *sans* foreclosure. *See Simons v. Brashears Transfer and Storage,* Okl., 344 P.2d 1107, 1113 (1959); *First Nat'l Bank of Alex v. Southland Prod. Co.,* 189 Okl. 9, 112 P.2d 1087 (1941), citing *Magnolia Pet. Co. v. State,* 175 Okl. 11, 52 P.2d 81 (1935), *Shaffer Oil & Refining Co. v. County Treasurer,* 175 Okl. 6, 52 P.2d 76 (1935). For further explanation of the rule that sets us free to supply here the legal authority for County's theory of defense, *see infra* note 35.

**35.** *Reynolds v. Special Indem. Fund,* Okl., 725 P.2d 1265, 1270 (1986). Reynolds teaches that if *in a public-law controversy* the aggrieved party *advances* the wrong reason for reversal, the reviewing court is free to *grant corrective relief from the urged error on an applicable theory chosen sua sponte*—i.e., a theory that (a) supports *the assigned error,* (b) was neither advanced below nor on appeal and *(c) is dispositive of the issue raised by the aggrieved party. See Burdick v. Independent School Dist.,* Okl., 702 P.2d 48, 54 (1985); *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 21 n. 11 (1982); *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 (1948).

**36.** The pertinent terms of 12 O.S.1981 § 686 provide:

"In actions to enforce a mortgage ... *judgments shall be rendered for the amount or amounts due* as well to the plaintiff as *other parties to the action having liens upon the mortgaged premises by mortgage or otherwise* ... and for *sale of the property charged and the application of the proceeds;* * * *" [Emphasis supplied.]

A junior encumbrancer *may* be joined in the foreclosure. Although it is not an *indispensable* party to foreclosure brought by a senior encumbrancer, *if it is not joined its lien remains unaffected by the decree. McCredie v. Dubuque Fire & Marine Ins. Co.,* 63 Okl. 184, 163 P. 535, 536 (1917).

**37.** A sheriff's sale may be set aside when (1) the sale price is so grossly inadequate that it shocks the conscience of the court; (2) the sale price is grossly inadequate and the sale is tainted by additional circumstances; *or (3) the result is inequitable to one or more of the parties before the court.* It is the court's duty, whether confirming or setting aside a sheriff's sale, to protect all parties concerned. The sale must appear to be fair and proper in all essential respects. *United Oklahoma Bank v. Moss,* Okl., 793 P.2d 1359, 1364 (1990).

**38.** The equity of redemption is a mortgagor's right to redeem his property from a lien. BLACK'S LAW DICTIONARY, p.485 (5th Ed. 1979). To *redeem* is "to buy back." Redemption is the realization of a right to have the property's title restored free and clear of the encumbrance by satisfaction of the mortgage obligation. BLACK'S *supra* at 1149. *See Sooner Fed. S & L v. Okl. Cent. Cr. Union,* Okl., 790 P.2d 526, 528 n. 4 (1990); *Coursey v. Fairchild,* Okl., 436 P.2d 35, 38 (1967).

According to First Federal's argument, if the sale in that case had been for an inadequate amount, the trial court could have denied cancellation relief in the present case. First Federal submits it should be relieved of having to go "through the motions of a [new] Sheriff's sale simply to say there was a Sheriff's sale."

■ A judicial sale on foreclosure is not conclusive or binding until it is *confirmed*.[39] But County was not a party to the prior foreclosure and is not bound by the earlier sheriff sale's confirmation.[40] *Confirmation is ineffective against one who was neither a party to, nor a participant in, a foreclosure proceeding.*[41] Even though First Federal may have its first mortgage reimpressed as a superior lien, it must once again foreclose that lien, this time against County's previously omitted interest.[42]

■ One who holds a lien inferior to another on the same property has a right to *redeem*, just as the owner *must* be allowed to redeem from a superior lien.[43] First Federal urges that it gave County the opportunity to redeem the property at the May 27 hearing in this case.[44] *This informal offer in a non-foreclosure context is no substitute for a foreclosure conducted in accordance with statutory strictures.*[45] We hence reverse the trial court's decree insofar as it "quiets First Federal's title" against County's unforeclosed tax liens and

orders them released.[46] Another foreclosure is here the law's *sine qua non* requirement.

## SUMMARY

County failed to bring for appellate review a record that would show (a) its own tax liens to be superior to First Federal's first mortgage lien *or* (b) the trial court's implicit finding that disallows legal merger to be clearly contrary to the weight of the evidence. That part of the *nisi prius* decision which implicitly preserves the foreclosed mortgage as a first lien must be affirmed. But since County's tax liens stand unforeclosed, the trial court's decision, insofar as it cancels and orders them released, is reversed without prejudice to a later foreclosure.

*Certiorari previously granted; the Court of Appeals' opinion is vacated; the trial court's "quiet title" decree is affirmed in part and reversed in part.*

HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur;

ALMA WILSON and KAUGER, JJ., concur in result.

---

**39.** 12 O.S.1981 § 765; *Sooner Fed. S & L, supra* note 38 at 529; *Willis v. Nowata Land and Cattle Co.,* Okl., 789 P.2d 1282, 1285, n. 3 (1990); *State ex rel. Com'rs. of Land Office v. Warden,* 197 Okl. 97, 168 P.2d 1010, 1014 (1946).

**40.** *McCredie, supra* note 36, 163 P. at 536.

**41.** For the notice requirements, *see Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 799, 103 S.Ct. 2706, 2711–2712, 77 L.Ed.2d 180 (1983); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See also Wells Fargo Credit Corp. v. Ziegler,* Okl., 780 P.2d 703, 705 (1989); *Cate v. Archon Oil Co. Inc.,* Okl., 695 P.2d 1352, 1356 (1985).

**42.** *See supra* note 21.

**43.** The terms of 42 O.S.1981 § 19 provide in pertinent part:

"One who has a lien, inferior to another upon the same property, has a right:
1. To redeem the property in the same manner as its owner might, from the superior lien...."

**44.** (Transcript at 6.)

**45.** *McLennon v. Deaver,* 203 Okl. 461, 223 P.2d 355, 357 (1950). For the procedure governing executions, *see* 12 O.S.1981 § 731 *et seq.* *See Cate, supra* note 41 at 1356.

**46.** We decide only that the trial court erred in ordering County's tax liens cancelled and released. No view is expressed about County's contention that the County Treasurer has no statutory authority to release a lien ordered to be removed by the court.