**Melburn LECHE, Plaintiff in Error,**

v.

**PONCA CITY PRODUCTION CREDIT AS-SOCIATION, Kenneth S. Pratt, Virginia Pratt, Maurice Martin, Cargill Incorporated, and Teichgraber Milling Company, Defendants in Error.**

**No. 42548.**

Supreme Court of Oklahoma.

Dec. 15, 1970.

Neal A. Sullivan, Newkirk, for plaintiff in error.

George W. Miller, Ponca City, for defendants in error.

BERRY, Vice Chief Justice.

This appeal involves a judgment adjudicating priority of mortgage claims between junior encumbrancers. Being a case of equitable cognizance the Supreme Court will examine the entire record and weigh the evidence, to determine whether the judgment clearly is against weight thereof, or contrary to law or established principles of equity. Clovis v. Clovis, Okl., 460 P.2d 878.

Prior to inception of these proceedings Kenneth Pratt and wife had been engaged in extensive cattle ranching operations in Osage County. After loan analysis of Pratt's affairs defendant in error, hereafter denominated Association, approved a loan commitment of $95,969.25 to Pratt. At that time (February 1963) Pratt's realty was encumbered by first mortgages to parties (Weis) who eventually initiated the foreclosure action wherein the present judgment was rendered.

On February 25, 1963, the Pratts executed a collateral note for $30,000.00, secured by a second mortgage upon the described 640 acres. This mortgage did not contain

a provision for future advances. The obligation sued upon and adjudicated prior and superior to claims of other creditors, was executed June 5, 1963, in order to correct certain inaccurate descriptions of lands involved, but represented the obligation first mentioned. The evidence shows Pratt was heavily indebted when the loan commitment was approved, and when the obligation sued upon was executed $96,019.18 credit already had been advanced. Association's loan application, approved February 15, 1963, was based upon a security agreement covering cattle, horses, machinery and feed, but this instrument apparently never emerged from Association's files. The loan analysis reflected this was a new loan and, after brief review of Pratt's operations, stated:

"* * * We are going to take a 2nd mortgage on the 640 acres of land since he is a steer operator so we will have a good cushion on the loan and the real estate loan cannot be increased to any other borrower, which he might choose to do. * * *"

On October 1, 1963, Pratt borrowed $15,000.00 from Leche. This loan, due May 1, 1964, was secured by a third mortgage upon 320 acres of land already covered by Association's mortgage. This mortgage was recorded May 6, 1964, and by October 1, 1965, the indebtedness had been reduced to $5,000.00, the amount claimed by Leche under his cross-petition in the foreclosure action, and also basis of his claim to superiority of the mortgage lien. Concededly Association's note and mortgage were executed and recorded prior to date of Leche's note and mortgage.

It is noteworthy that on May 15, 1964, Association charged Pratt with $751.00, noting this amount was required to extend Leche's loan to October 1, 1964. On June 2, 1964, Pratt's indebtedness amounted to $127,074.00. Association's credit examination report stated Pratt was in "bad shape" and there had been over extension of credit on chattels. However, Association antici-

pated recoupment of $20,000.00 from sale of land bearing third mortgage. Also worthy of mention is the fact that on October 1, 1964, Association approved an additional advance ($12,155.00) to Pratt, and on January 18, 1965, approved $1,468.50 additional advance. This is of interest in view of letter communication from Association's manager, dated October 22, 1964, stating:

"Dear Mr. Pratt:

"This is to advise that I took your application for a renewal loan, in the amount of $79,823.37, before our loan committee and Board of Directors, at their meeting October 20, 1964. It was their decision that we could not renew your loan or continue to finance your operations because of insufficient collateral and because of the way you have handled your loan the past year and a half since we have started financing your operations."

Foreclosure action was instituted January 6, 1966, by first mortgagees (Weis), in which various Pratt creditors were named parties defendant. Association's answer alleged the note was past due and unpaid and asked judgment thereon. By cross-petition Association asserted right to foreclosure of its mortgage, and asked determination of priority as to claims of other defendants, and for foreclosure and sale of realty in satisfaction of delinquent indebtedness. The basis of Leche's claim was mentioned above.

Trial of the case resulted in judgment decreeing foreclosure of mortgages and order for sale of realty in satisfaction of indebtedness. Proceeds of sale were ordered paid into court for disposition after outcome of litigation. So far as pertinent here, the judgment decreed Association's mortgage to be prior and superior to claims asserted by Leche, and other judgment creditors.

As noted, this appeal concerns only whether the trial court correctly determined Association's mortgage was prior to Leche's claim based upon a third mortgage. Leche's position both in the trial court, and on appeal, simply is that after Association

had notice of his mortgage Association could not increase the secured indebtedness or extend the mortgage to debts not included originally.

Briefly stated, Association's position claims a right existed to make advances and hold the collateral note and mortgage as additional security. In this connection Association also urges existence of a right to make future advances because of provisions within Collateral Agreements with Pratt, but which were unrecorded. A further claim is that advances properly were made, in that under 12A O.S.1961 § 9–204(5), a Security Agreement executed by Pratt, obligations covered by such agreement may include advances, even though not made pursuant to commitment. From this position Association urges a note given in consideration of pre-existing indebtedness is supported by valuable consideration; and for a new note to discharge liability on a prior note, same must be given with such understanding on part of both maker and holder of prior note. Citing Luker v. Kells, Okl., 411 P.2d 511; Cravens v. First State Bank, etc., Okl., 355 P.2d 1025. From this argument, and reliance upon text authority in 36 Am.Jur. Mortgages, § 234, Association concludes future advances made under contract with Pratt take precedence over a subsequent encumbrancer, even with knowledge of subsequent encumbrance when advance is made.

██ Consideration of the issue from standpoint of this argument is unnecessary. First, it must be noted the Collateral Agreements between Association and Pratt, providing for future advances, were unrecorded. Concededly the unrecorded agreements were binding between Pratt and Association without recordation. However, it is elementary such unrecorded agreements cannot affect intervening rights of innocent third parties. Secondly, Association's argument assumes the collateral note sued upon actually was a renewal note for pre-existing indebtedness, which would not have effect of discharging liability. Nei-

ther the reasoning nor the conclusion urged are supported by the record.

██ At all times, Leche's position had been that Association could not increase indebtedness under its mortgage, or extend the mortgage to encompass debts not included originally, after Association had notice or knowledge of his debt and security. We are of the opinion this position is correct, particularly in view of the evidence clearly establishing Association's actual knowledge of Pratt's obligation to Leche. Association's manager admittedly had discussed Pratt's obligation with Leche on more than one occasion, both in Pratt's presence and in presence of Leche and his attorney. Also there was uncontradicted evidence Leche and another attorney discussed the matter in Association's office in February—March or April of 1963. Although the manager's recollection was lacking in some respects, his testimony was sufficient to disclose knowledge of Pratt's indebtedness. There is no dispute of the fact Association knew of Leche's note and mortgage on October 1, 1963, at which time Pratt already owed $52,993.97 to Association. After that date Association received more than $91,000.00 payments from Pratt, and likewise continued to make further advances.

The applicable rule of law is stated in 36 Am.Jur., Mortgages § 234:

"* * * The greater array of authority, however, is found on the side of the doctrine that advances made after *notice of subsequent interests do not have* priority over such interests. This rule has been applied to subsequent liens and encumbrances, as well as to subsequent grants of the property. The mere specification in the senior mortgage that the further advances are not to exceed a fixed sum does not vary the rule. The rule is especially applicable where the advancements are optional with the mortgagee. * * *"

In 59 C.J.S. Mortgages § 230, at 299, the rule is stated:

"In accordance with the general rule, after notice of the attaching of a junior lien, the senior mortgagee ordinarily will not be protected in making further advances under his mortgage given to secure such advances, at least where he was under no binding engagement to make such advances. * * *"

See 138 A.L.R. 558, and following annotations.

As to what constitutes notice, it is understood that where there is competent evidence, direct or indirect, from which a court is entitled to infer as a conclusion of fact, that information was communicated personally to, or received by, a party there is actual notice. Daniel v. Tolon, 53 Okl. 666, 157 P. 756, 4 A.L.R. 704. The evidence reviewed above unequivocally establishes Association knew of Leche's note and mortgage prior to advances which prejudiced Leche's rights, whose lien attached upon the property as it was when notice and knowledge of his note and mortgage was communicated to Association. The Association was not obligated for future advances under the mortgage, which in no way bound Association to make further advances. The collateral agreements which Pratt executed made future advances purely optional, and advances which were made came later and after Association knew of Leche's note and mortgage. Under these circumstances Association cannot tack those advances to the mortgage debt to prejudice of Leche's junior encumbrance.

We have not considered this precise question. In Heller v. Gate City Bldg. & Loan Ass'n., 75 N.M. 596, 408 P.2d 753, cited by Leche, that court unequivocally stated:

"There is an overwhelming agreement among the courts in this country that a first mortgagee making future advances, which are optional and not obligatory under the first mortgage, with actual knowledge of an intervening lien, cannot obtain priority for subsequent advances over the intervening lien. * * *"

That statement is supported by extensive authority from numerous courts. And, as basis for the rule announced that court said, at 756:

"* * * A contrary view would place an owner, who is unable to demand advances from the holder of the first mortgage, in the unfortunate position of also being unable to borrow on his property from another by reason of the possibility that, after the giving of a later mortgage to the latter, the holder of the prior mortgage might make advances to the owner, which would take priority over the claim of the second mortgage. * * *"

The obligation sued upon, a standard real estate mortgage, admittedly was collateral mortgage taken as a "cushion", and mortgagors received no payment when the note was made. Neither was face amount of the note credited to mortgagors, nor was the interest charged included either as advance or debit, in mortgagors' account. There was no provision for the mortgagee to make future advances upon security of the mortgaged premises. Nothing in the instrument afforded Leche, who chose to extend credit upon strength of the security, any notice his junior lien might be imperiled by future advances burdening the mortgage security. Association was without legal right to claim priority of its mortgage to secure advances made after notice of Leche's loan. The trial court erred as a matter of law in decreeing Association's mortgage prior and superior to Leche's lien.

Judgment reversed with directions to enter judgment for Leche upon cross-petition.

IRWIN, C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, HODGES and McINERNEY, JJ., concur.

LAVENDER, J., concurs in conclusion.