Melburn LECHE and Ruth Leche,
Appellees,

v.

Wilbur STOUT and Imogene Stout,
Appellants.

No. 43792.

Supreme Court of Oklahoma.

Oct. 31, 1972.

Rehearing Denied Jan. 23, 1973.

Armstrong, Burns, Baumert & Drake, Ponca City, for appellees.

W. D. Greenshields, Ponca City, for appellants.

WILLIAMS, Justice:

This is an appeal from the judgment of the trial court decreeing specific performance of a contract for the sale of real estate.

Plaintiffs, Mr. and Mrs. Leche, as buyers, entered into a contract for the purchase of several hundred acres of land in Noble County from the defendants, Mr. and Mrs. Stout. The total purchase price was $102,000 and the defendants agreed to convey good and merchantable title free and clear of all claims, liens and encumbrances, with exceptions noted in the contract and not material here. For convenience we will refer to these parties as buyers and sellers respectively, or by name.

When the contract was executed, there were three mortgages on the premises. One was held by the Federal Land Bank and another was held by Mr. and Mrs. Kodesh, from whom the sellers had purchased the lands. Defendant Ponca City Production Credit Association held a note and mortgage executed in connection with what is called an "open-end loan" arrangement with the sellers.

The contract contained the usual provisions as to title examination and approval by buyers, and was dated February 11, 1966, at which time buyers paid sellers a $27,000 down payment as required. Under paragraph III.3 of the lengthy contract, the $75,000 balance was to be paid to the escrow agent (a Ponca City bank) not later than February 11, 1968. Other pertinent provisions of the contract were as follows:

"V.2 On or before the 11th day of February, 1968, Sellers shall furnish the escrow agent a pay-off statement from the holder of any mortgage or other lien against any of said real property described in Paragraph I.1 hereof, together with a release of any such lien.

"V.3 The escrow agent shall, upon final approval of title from the final deposit made by Buyers as provided in Paragraph III.3 hereof, pay off *in full* holders of mortgage liens or other liens against said real property or any part thereof, and *pay the balance thereof* to Sellers or their assigns." (Emphasis added.)

Although it is not an issue in this appeal, we note a possible conflict between these two paragraphs as to whether the existing mortgage liens should be paid before, or after, the buyers deposited the $75,000 final payment. Also, it is obvious that no purpose would have been served by requiring sellers, under paragraph V.2, to furnish pay-off statements if the releases themselves were furnished. We think the proper interpretation, and the one adopted by the parties, is that sellers were to furnish either pay-off statements or releases, and that if pay-off statements were furnished, the final $75,000 payment would be an amount sufficient to enable the escrow

agent, under paragraph V.3, to pay off all three mortgage liens and "pay the balance thereof" to sellers. As we shall see, sellers furnished neither a pay-off statement nor a release as to the Credit Association mortgage.

Shortly after the contract was signed, buyers purchased the note secured by the Kodesh mortgage, and took an assignment of the mortgage.

During the following two years, the contract was amended by agreement to delete certain lease-back provisions not material to this appeal. A dispute arose between buyers and Ponca City Production Credit Association as to whether the Kodesh mortgage had priority over the Credit Association mortgage, and, later, a similar dispute as to the relative rights of these parties under the real estate sale contract and the Credit Association mortgage. For a general description of Credit Association's method of doing business, which gave rise to these disputes, and a discussion of the legal questions involved in a similar situation, see Leche v. Ponca City Production Credit Association, Okl., 478 P.2d 347.

Also, a $37,000 cattle sale transaction between the Stouts, as sellers, and Leche and an associate, as buyers, was entered into but not completed by Leche and his associate, who stopped payment on the check after a part of the cattle had been delivered to them. The details of this controversy are not in the record before us; it is the subject of a separate suit between the parties and therefore cannot be considered in any determination of the equities as between the parties.

Efforts were made to advance the closing date of the real estate sale contract and there were negotiations in connection therewith, but sellers could not furnish pay-off statements or releases of the mortgages.

On February 7, 1968, buyers notified sellers by mail that the transaction would be closed on February 12th (Feb. 11 was a Sunday) and that "Under the terms of the agreement you are to furnish pay-off statements of existing mortgages." Note that releases were not demanded.

On the 12th, buyers, sellers, and their respective counsel (not the ones now representing them in this appeal) met in the office of sellers' attorney. At that time there was no dispute as to the amounts remaining due on the Federal Land Bank mortgage (about $35,000) or the Kodesh mortgage (about $20,000). Sellers, however, were either unable or unwilling to furnish either a pay-off statement or a release as to the Credit Association mortgage, which on its face secured the payment of $35,000. Since the three mortgage claims together amounted to more than $75,000, buyers did not deposit the final payment with the escrow agent.

About six weeks later sellers notified the escrow agent that buyers had breached the contract by failing to deposit the final payment and instructed the agent not to deliver sellers' deeds to buyers except upon the written consent of sellers, "or in pursuance of an Order of the Court directing same."

Four days later (March 25, 1968) buyers instituted the action which led to the appeal now before this Court. They alleged that they were at all times ready, willing and able to perform under their contract, and asked for specific performance of the contract against the sellers with damages for the loss of use of the premises. They also alleged that, for reasons not material here, the mortgage held by the defendant Credit Association was junior and inferior to their rights under the contract, and asked that the Association be required to prove the nature and extent of its lien against the premises concerned.

Sellers' answer as finally amended may be described as a general denial with an admission of the execution of the contract, together with an affirmative allegation that buyers had themselves breached the contract by failing to deposit the final payment, and a prayer that sellers be permitted to retain the $27,000 down payment as liquidated damages. The answer of the

Credit Association alleged, among other things, that it held a mortgage lien against the premises in the amount of $35,000.

After trial, the court made extensive findings of fact and conclusions of law which are in the record before us. The judgment itself was generally in favor of buyers and against sellers, decreeing specific performance in the manner set out. Buyers were directed to deposit $75,000 with the escrow agent within ten days after the judgment should become final, either by operation of law or by affirmance after an appeal to this Court. As between plaintiff buyers and defendant Credit Association, the court held that, for reasons not material to this appeal, the Credit Association mortgage was not a lien against the premises concerned. The court directed the escrow agent (which had been made an additional party defendant) to pay, upon receipt of the final $75,000 payment, the amount claimed by the Federal Land Bank on its mortgage, and the amount claimed by buyers under the Kodesh mortgage. Buyers were awarded damages for loss of use of the premises since the closing date in an amount approximately the same as the rental value as agreed in the lease-back provisions later deleted from the contract. The remainder, after payment of costs, was to be paid to sellers.

Since the defendant Credit Association did not appeal, that portion of the judgment against it, holding its alleged mortgage lien to be unenforceable as against buyers, has become final.

In their briefs in support of their appeal, sellers take positions that are, to us, confusing and contradictory. For instance, in their proposed findings of fact, set out in the brief, they asked the trial court to find, in paragraph 1, that two things prevented the closing of the land sale contract, the second of which was *their own failure to furnish the pay-off statement from the Credit Association.* Yet, in paragraph 2 of the same instrument, they asked the court to find that *"There were no title defects and no requirements * * *."* In their

further discussion and argument in the briefs, they consistently ignore the uncontradicted fact that they failed to honor their commitment, in paragraph I.1 of the contract, to convey title "free and clear of all claims, liens or encumbrances."

In their reply brief, sellers suggest at one point that the contract was rescinded by mutual agreement; yet, their only description, in the same paragraph, of the meeting of February 12th, at which the mutual rescission allegedly took place, was that "settlement negotiations 'rapidly deteriorated', legal action was mutually threatened, and the meeting abruptly ended." After a careful examination of the entire record before us, we can find no evidence of any mutual agreement to rescind the contract.

■ Sellers also argue that the purchase of the Kodesh note and mortgage by plaintiffs (buyers) "legally constituted a merger of the mortgage indebtedness and canceled it into *any equity* then existing in favor of plaintiff" (emphasis added) citing Dowling v. Springer, 186 Okl. 656, 100 P.2d 278. However, as clearly shown in the Dowling case, the doctrine of merger is applicable only in situations where the *legal* estate and a lesser equitable estate in the same land are acquired by the same person, and then only in the absence of an intention that there shall be no merger. We know of no rule providing that the acquisition of two different equitable estates in the same land by the same person operates to "merge" one into the other, as argued by sellers.

In their response to the petition for rehearing filed after the decision of The Court of Appeals in this case, sellers argue that the trial court erred in holding, in effect, that buyers' failure to deposit the final $75,000 payment with the escrow agent on the closing date was excused by sellers' failure to furnish either pay-off statements or releases evidencing a merchantable title, as they had agreed to do.

In this connection, sellers argue that their own failure to furnish pay-off statements

should be excused because buyers had ready access to the records of Ponca City Production Credit Association and actually knew or could have known how much remained unpaid on the note secured by the Credit Association mortgage on the closing date. The record supports this argument, and it would be persuasive if the record also showed that sellers' indebtedness to Credit Association on that date had been reduced to such an extent that the total amount of the three mortgage liens was less than $75,000, thus enabling the escrow agent, under paragraph V.3, to pay off *in full* the mortgage lien indebtedness and "pay the balance thereof" to sellers.

Upon a careful search of the record before us, we find no such evidence. There is testimony by an official of the Credit Association (who did not become an employee thereof until about a month after the closing date of the contract) to the effect that if, *during his tenure,* a release of the Credit Association mortgage had been requested, he would have recommended that it be given. This is, of course, not evidence as to the amount remaining due on the closing date. Also, if a release could have been had for the asking, we cannot understand why the answer of the Credit Association in this case—verified by this same official about a month after his tenure began—contained a clear and unequivocal claim of a mortgage lien in the amount of $35,000.

In addition, we can conceive of no reason—and none is suggested in the record or briefs before us—why the buyers should fail to deposit the final $75,000 payment at a time when title could have been made clear and merchantable with the $75,000 under paragraph V.3. In this connection, we note that one of the *sellers* testified that, in his opinion, the land concerned, at time of trial, was worth about $135,000 or $145,000.

■ Since the record does not show that the three mortgage liens together amounted to less than $75,000 on the closing date, we hold that sellers' failure to furnish either a release or a pay-off statement as to the Credit Association mortgage cannot be excused merely because buyers had ready access to Credit Association records. Sellers' duty under their contract was to furnish evidence of a clear and merchantable title under paragraph V.2, or evidence of a title that could have been made clear and merchantable with the $75,000 payment under paragraph V.3. They did not do so.

■ For substantially the same reasons, buyers' failure to deposit the final payment on the closing date was justified, and could be excused by a court of equity, under the facts in this case. Indeed, if they had deposited the final payment and accepted delivery of the deeds from the escrow agent, it might have been at least arguable that they had waived their right to a title free and clear of liens, claims and encumbrances, at least to the extent of about $15,000. Note that the decision of this Court in Leche v. Ponca City Production Credit Association, Okl., 478 P.2d 347, was not promulgated until some time after the closing date of this contract, and after this case was tried.

■ The general rule is that in granting or refusing specific performance, a court of equity exercises a sound judicial discretion controlled by the principles of equity. 81 C.J.S. Specific Performance § 9; 79 A.L.R. 1240; In re Hayhurst's Estate, Okl., 478 P.2d 343. A tender of the consideration before suit is excused where, by reason of encumbrances or defects of title, defendant is unable to convey such title as he contracted to convey to the purchaser. 81 C.J.S. Specific Performance § 103. If, because of defects in the vendor's title, which he fails or refuses to cure, a tender of performance by the vendee would be a useless act or an idle ceremony, his failure to make such tender will not preclude in his behalf the equitable relief of specific performance, at least where he tenders performance in his bill or petition. 49 Am.Jur. Specific Performance, Sec. 144. Buyers' allegation, in their petition in this

case, that they were at all times ready, willing and able to perform, is supported by competent evidence.

■ We therefore hold that the trial court did not err in determining in effect, that buyers' failure to deposit the final payment on the closing date was excused by sellers' failure to furnish proof that their title was free and clear of liens or failure to make showing that sellers (or escrow agent) could fully discharge all such liens by application of proceeds of final payment if and when deposited.

The judgment of the trial court is affirmed.

All of the Justices concur.